UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **CARHARTT, INC.,**<br><br>       Plaintiff,<br><br>v.<br><br>**COSTA DEL MAR, INC.,**<br><br>       Defendant. | Case No. 3:21-cv-11844-RHC-CI |

**AGREED DISCOVERY PROTOCOL**

Plaintiff Carhartt, Inc. ("Carhartt" and/or "Plaintiff") and Defendant Costa Del Mar, Inc. ("Costa" or "Defendant") (collectively, the "Parties") enter into this Agreed Discovery Protocol (the "Protocol") to address: (i) technical specifications governing electronic discovery and hard copy documents and (ii) electronic discovery protocols for searching for electronic data responsive to the Parties' discovery requests.

I. **TECHNICAL SPECIFICATIONS**

IT IS HEREBY AGREED, by and between the Parties that the following technical specifications shall govern electronic discovery and hard copy documents in this matter:

    A. **E-mails**

    1.    The Parties shall produce e-mails to each other as single-page TIFF

1

images with document-level extracted text (.txt), Opticon (.opt) and Relativity (.dat) load files.

      2.      Load files shall contain the fields listed in <u>Exhibit A</u>, to the extent they are available.

      3.      To the extent available, the producing party shall preserve all e-mail files in native format with all metadata intact and shall produce the metadata for any e-mails reasonably requested by the other party.

      4.      If a document does not contain extractable text, the producing party shall provide OCR for that document.

      5.      E-mail attachments shall be handled according to the provisions of Subsection B, below, applicable to other electronic documents. To the extent available, the Parties shall preserve "parent/child" relationships between e-mails and attachments.

      6.      **Email Thread Analysis.** Email thread analysis may be used to reduce the volume of emails reviewed and produced. The produced emails must include all of the responsive information from a thread, including attachments. For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

      B.      <u>**Other Electronic Documents**</u>

      1.      Except as provided in paragraphs B(5) and B(6) below, the Parties shall

produce Word and other electronic documents as single-page TIFF images with accompanying document- level extracted text (.txt), Opticon (.opt) and Relativity (.dat) load files.

2. **Load Files.** Load files shall include the fields listed in Exhibit A, to the extent they are available.

3. **Metadata for Redacted Documents**. For any document that is redacted, the producing party may withhold any metadata that is the subject of the redaction, and provide OCR for the produced image as redacted.

4. **Excel Files**. All Excel files and other spreadsheets shall be produced in native format unless they are easily readable in a non-native format as set forth herein. Notwithstanding this, the Parties understand that producing native files may effect some changes in metadata. Metadata for name and creation dates shall be preserved when producing native files whenever possible.

5. **Native Format**. Native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality designation. Wherever feasible, the producing party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from native production. Additionally, if after reviewing production of other ESI in a non-native format, a receiving party believes that it is necessary to review a certain document or documents in native format, the Parties agree to engage in discussion regarding

3

production of discrete documents in native form, which production will not be unreasonably withheld.

6. **Native Redactions.** In the event that the producing party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

7. **Databases**. Each party may make a request to specify the form in which ESI is to be produced when that ESI is generated by or maintained in Microsoft Access or other database software, if applicable. If the Producing Party objects to such form, the Parties shall undertake reasonable efforts, and, if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production. Where a party produces Microsoft Access or other database software files only in native format, the producing party shall provide a corresponding image (TIFF) placeholder that contains the Bates number and Confidentiality designation of the file.

8. **Inaccessible ESI.** The parties agree that the parties need not preserve, search for, or produce: (1) deleted, slack, fragmented, or other data only accessible by forensics; (2) random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system; (3) on-line access data

such as temporary internet files, history, cache, cookies, and the like; (4) server, system, or network logs; (5) data remaining from systems no longer in use that is unintelligible on the systems currently in use; and (6) back-up data that is entirely duplicative of data that can be collected elsewhere. Also, absent a showing of good cause, the following are deemed not reasonably accessible and need not be collected or preserved: (1) mobile phones; (2) voicemail messages; and (3) instant messages and/or chats not stored on a server dedicated to this type of messaging.

9. **No Backup Restoration Required.** No party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including, but not limited to, legacy or discontinued computer systems that are no longer in use, backup tapes, disks, SAN or other forms of media, in order to comply with its discovery obligations in the present case, unless otherwise ordered by the Court.

10. **Archived Materials**. Absent a showing by the non-producing party of circumstances whereby the need for such ESI substantially outweighs the burden associated with recovering it and that no other source for such ESI is otherwise available, the producing party shall not be required to search back-up tapes and data or other back-up, archived, or disaster recovery systems.

11. **No Obligation to Convert Third Party Productions**. The Parties agree that any document production received from a third party shall be produced in

5

the format in which it was received, except a party may provide Bates labels and a confidentiality designation if appropriate.

12. **Method of Production**. The Parties agree that documents will be produced via secure file transfer, if possible, or encrypted media, if necessary due to volume.

13. **Time Zones.** Parties will use universal coordinated time (UTC) zone for processing.

14. **Tiffing Settings**. Documents produced in TIFF format shall retain tracked changes, embedded comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files, unless redactions are necessary to remove privileged material.

15. **Usual Course of Business**. Documents produced pursuant to this order shall be deemed to have been produced as they are kept in the usual course of business pursuant to Fed. R. Civ. P. 34(b)(2)(E)(i).

16. **Preservation of Native Files**. To the extent available, the producing party shall preserve all native electronic document files with all metadata intact and shall produce such native files and metadata (with the exception of native files for documents that have been redacted, in which case the Parties shall confer in good faith to determine the method by which the native file will be produced) for any documents or sets of documents reasonably and specifically requested by the other

party.

17. **Duplicates**. Electronically stored information and e-mails (including e-mail families) which are substantively identical duplicates need not be produced by the Parties. The Parties may use and rely in good faith on reasonable electronic means of determining such exact and identical duplicates, so long as the means of identifying duplicates involves matching the MD5 Hash value for the documents. The Parties shall maintain the originals of all such exact and identical duplicates.

C. **Hard Copy Documents**

1. The Parties shall produce hard copy documents as single-page TIFF images with accompanying document-level OCR text (.txt), Opticon (.opt) and Relativity (.dat) load files.

2. Load files shall include the fields listed in Exhibit A, to the extent they are available. The Parties recognize that a significant amount of the metadata ordinarily reflected in the load file fields for electronic documents will not be available for hard copy documents.

3. The Parties may withhold from production hard copy documents which are exact and identical duplicates of documents produced electronically provided that any such hard copy which contains notations, handwritten or otherwise, not included on the electronically produced document, shall not be considered as an exact and identical duplicate. Any party may request information regarding the

particular electronic means of determining exact and identical duplicates from any other and such information shall be provided within a reasonable time. The Parties shall maintain the originals of any non-produced hard copy.

D. **TIFF Images Generally**

1. Except as specified below, TIFF images produced by the Parties shall consist of:

   a) single-page, color for color, 300 dpi Group IV TIFF or JPEG images, one image per page, named after the Bates number with extension ".tif" or ".jpg" with an Option (.opt) load file; and

   b) text files, one file per document (document level text files), containing text extracted from the native file or OCR for redacted documents or hard copies, named after the starting Bates number of the document, with extension ".txt".

2. The Parties shall provide metadata in a Relativity-format delimited file with the following delimiters:

   - *Record delimiter:* Windows newline/Hard return ASCII character 174 ( )

   - *Field delimiter:* ¶ (ASCII 20)

   - *Multi-value delimiter:* Semicolon ; (ASCII 59)

   - *Text qualifier:* Small thorn þ (ASCII 254)

E. **Confidentiality Designations**

If a Party designates a document it is producing as "Confidential – Subject to

8

Protective Order" or "Highly Confidential – Attorney's Eyes Only" as allowed by the Parties' Stipulated Protective Order, the .dat/.dii file accompanying the production of the document shall include a field indicating this designation for each such document.

Documents and data produced pursuant to this Protocol are subject to the Stipulated Protective Order entered in this matter, including specifically the clawback provisions provided for therein—both with respect to production of privileged and/or work product material—whether inadvertent or otherwise—and failure to designate documents as Confidential or Highly-Confidential – Attorney's Eyes Only—whether inadvertent or otherwise. The production of privileged or work-product protected documents, electronically stored information, or other information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Protocol shall be interpreted to provide the maximum protection allowed by law and applicable court rules.

II. **ELECTRONIC DISCOVERY SEARCH PARAMETERS**

The following parameters shall apply to the Parties' searches for electronic data responsive to the Parties' discovery requests, to the extent such electronic data has not already been produced.

A. **Email-Specific Search Protocol**: The Parties agree to negotiate in good

faith to attempt to reach an agreement as to search parameters for email ESI, which includes discussion regarding custodians, the number of custodians, and reasonably tailored search terms. To the extent the Parties cannot agree, both Parties reserve the right to seek relief from the Court.

  **B.** **<u>Non-Email Electronic Data Search Protocols</u>**:  The Parties agree to negotiate in good faith to attempt to reach an agreement regarding searching non-email, electronic data, if needed.

  **C.** **<u>General</u>**:  In order to reduce expense and burden of a document-by-document linear review for both non-email and email data, the Parties agree that they may utilize technology assisted review software to identify the most relevant, responsive documents. To the extent a Party chooses to search and review using a technology or methodology other than, or in addition to, search terms (including, for instance, predictive coding), the Party shall disclose its intent to use that technology and the name of the technology to be used. It is the producing party's right to determine the best method of search and review and how it will comply with its obligations pursuant to Federal Rule of Civil Procedure 26.

  **D.** **<u>Objections</u>**: Nothing in this Protocol shall be construed as requiring production of any document or information the production of which has been objected to absent an order from the Court compelling production.

  **E.** **<u>Search Not Exclusionary</u>**: This Protocol is intended to gather

responsive documents. It is not intended to exclude responsive documents. If the Parties identify documents that are responsive to applicable discovery requests, such party has an obligation to produce any non-privileged responsive documents, even if they are not captured using the proposed search protocol. Further, nothing in this Protocol shall prohibit the Parties from producing additional documents from other custodians and/or sources that support their respective claims or defenses.

### III. COSTS

The Parties agree that they shall each bear their own reasonable and ordinary costs incurred in connection with the preservation and production of reasonably accessible electronically stored information. However, nothing in this Protocol shall affect the right of any Party to seek reimbursement for costs incurred in connection with the preservation and production of electronically stored information that is not reasonably accessible or the right to seek an award of fees or costs that may otherwise be available pursuant to contract, law, or court order.

### IV. PRIVILEGE LOGS

The Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege. For electronic documents, each party may opt at its own discretion to create privilege logs using one of the methods identified herein.

The Parties agree that, absent a showing of good cause, privilege logs will be

comprised of metadata relating to "top-of-chain" emails and that email families will be logged as one privilege log entry.

    A.    **Automated Log**. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

    a.    SUBJECT
    b.    FILE NAME
    c.    AUTHOR
    d.    SENDER/FROM
    e.    RECIPIENTS/TO
    f.    CC
    g.    BCC
    h.    SENT DATE TIME
    i.    RECEIVED DATE TIME
    j.    FILE CREATED DATE TIME
    k.    FILE LAST MODIFIED DATE TIME
    l.    PRIVILEGE TYPE
    m.    BEG PRIVBATES
    n.    END PRIVBATES

With respect to the SUBJECT OR FILENAME fields, the producing party may substitute a description of the communication where the content of these fields may reveal privileged information but must indicate that the fields have been revised. Should the receiving party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a description that is sufficient to identify the subject of the document and the basis for the privilege assertion for that entry, to be produced within five business days of the request, or within such other reasonable time as the Parties may agree or the Court

may order. If after receipt of the description the receiving party believes that any document withheld is not, in fact, privileged, it may take appropriate action with the Court.

      **B.**     **Standard Log**. Any party may also prepare a standard privilege log, which will include these fields: author/sender/from; recipients/to; cc; bcc; date; privilege type; and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Should the receiving party in good faith have reason to believe a particular entry on the Standard Log does not reflect a privileged document, it may request a description that is sufficient to identify the subject of the document and the basis for the privilege assertion for that entry, to be produced within five business days of the request, or within such other reasonable time as the Parties may agree or the Court may order. If after receipt of the description the receiving party believes that any document withheld is not, in fact, privileged, it may take appropriate action with the Court.

      **C.**     **Post-Lawsuit Documents**. Documents dated after the filing of the lawsuit containing privileged and/or work product material relating to the lawsuit do not need to be logged.

      SO ORDERED.

Dated: March 14, 2023                                s/Robert H. Cleland
                                                                Honorable Robert H. Cleland
                                                                United States District Court Judge

**Approved as to Form and Substance:**

DICKINSON WRIGHT PLLC

*/s/ Salina M. Hamilton*
John S. Artz (P48578)
J. Benjamin Dolan (P47839)
Yafeez S. Fatabhoy (P83064)
Salina M. Hamilton (P75296)
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
Tel: (734) 623-7075
*jsartz@dickinsonwright.com*
*bdolan@dickinsonwright.com*
*yfatabhoy@dickinsonwright.com*
*shamilton@dickinsonwright.com*

*Attorneys for Plaintiff Carhartt, Inc.*

BROOKS KUSHMAN P.C.

*/s/ Chelsea E. Pasquali (with consent)*
Marc Lorelli (P63156)
Chanille Carswell (P53754)
Rebecca J. Cantor (P76826)
Chelsea E. Pasquali (P77375)
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075
Tel: (248) 358-4400
*mlorelli@brookskushman.com*
*ccarswell@brookskushman.com*
*rcantor@brookskushman.com*
*cpasquali@brookskushman.com*

*Attorneys for Defendant Costa Del Mar, Inc.*

# EXHIBIT A

| FIELD | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| **Bates Begin** | Bates number of the first page in the document. | ABC00000001 |
| **Bates End** | Bates number of the last page in the document. | ABC00000015 |
| **Family Begin** | Bates number of the first page in the document family. | ABC00000001 |
| **Family End** | Bates number of the last page in the document family. | ABC00000030 |
| **Page Count** | Number of pages produced. | 15 |
| **Custodian** | The name of the custodian of this document. | Doe, John |
| **All Custodians** | When documents have been globally deduplicated, the names of the other custodians who also possessed the document. | Smith, Mary; Jones, William; Brown, Jane |
| **From** | Author of the e-mail | Doe, John <jdoe@company.com> |
| **To** | Recipient(s) of the e-mail | Smith, Mary <msmith@company.com>; Jones, Williams <jwilliams@company.com> |
| **CC** | Copyees of the e-mail | Brown, Jane <jbrown@company.com> |
| **BCC** | Blind Copyees of the e-mail | Doe, John <jdoe@company.com> |
| **E-Mail Subject** | Subject of the e-mail message | RE: Our Project |
| **File Name** | Original file name of the document; may contain the subject of the e-mail for e-mails | RE Our Project.msg MyAttachment.xlsx |
| **File Extension** | Original file extension of the document when it was collected | Msg |
| **Author** | Value of the author field in the native file | Doe, John |
| **Date Sent** | Date e-mail was sent | 12/31/2013 |
| **Time Sent** | Time e-mail was sent | 14:54:27 |
| **Date Received** | Date e-mail was received | 12/31/2013 |
| **Time Received** | Time e-mail was received | 14:54:29 |
| **Date Created** | Date document was created | 12/30/2013 |
| **Time Created** | Time document was created | 18:50:20 |
| **Date Modified** | Date document was last modified | 12/31/2013 |
| **Time Modified** | Time document was last modified | 09:30:15 |

| **MD5 Hash** | Unique identifier generated using the MD5 cryptographic hash function. | D564668821C34200FF3E32C9BFDCCC80 |
|---|---|---|
| **Thread Group** | If only inclusive emails are produced, then thread group shall be provided for the families. | A00001e21 |
| **Confidentiality** | The confidentiality designation requested for this document. | Highly Confidential |
| **Text File** | Location of the text file, relative to the root of the volume. | TEXT\000001\ABC00000001.TXT |
| **Native File** | For documents produced natively, a link to the location of the native file, relativity to the root of the volume. | NATIVE\000001\ABC00000015.XLSX |