UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARHARTT, INC.,

        Plaintiff,

v.

COSTA DEL MAR, INC.,

        Defendant.

_____/

Case No. 2:21-cv-11844

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING MOTION TO COMPEL [123]**

Costa Del Mar moved to compel production of all survey questionnaires and data used by Carhartt's expert, Dr. Thomas Maronick. ECF No. 123, PageID.11986. Carhartt hired Maronick to produce a report that assessed the likelihood of consumer confusion between Carhartt's logo and Costa's logo. ECF No. 67, PageID.1110–1111. During discovery, however, Carhartt did not produce all the consumer confusion surveys administered by Maronick. So, Carhartt filed a motion to compel, focused especially on a "soft-launch survey" administered by Maronick. Because the surveys, including their questionnaires and data, are discoverable under Federal Rule of Civil Procedure 26(a)(2)(B)(ii), the Court will grant the motion.[1]

---

[1] Based on the parties' briefing, the issues are clear. Accordingly, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2); Practice Guidelines for Judge Stephen J. Murphy, III.

1

## BACKGROUND

In Maronick's expert report from October 31, 2024, he analyzed the results from two consumer confusion surveys—Survey One and Survey Two. ECF No. 67, PageID.1107, 1132–1133. At Maronick's deposition, on November 22, 2024, Costa asked him why the file for Survey One was entitled "Carhartt-New-2." ECF No. 123-4, PageID.12024.[2] Maronick testified that, prior to Survey One, he did not create any other surveys. *Id.* at PageID.12025. That was not true.

On December 27, 2024, after prodding from Costa, Carhartt produced an earlier survey, entitled "Carhart-NEW," that Maronick found after reviewing his records. ECF No. 123-6, PageID.12038. The production came four days after the expert deposition deadline. ECF No. 56, PageID.701. Carhartt's counsel said that Maronick never administered "Carhart-NEW" and that there was no data for it. ECF No. 123-9, PageID.12085. Carhartt's counsel also said that there were no surveys prior to "Carhart-NEW." *Id.* But neither representation was true.

In fact, Maronick *did* administer "Carhart-NEW" and collect data. ECF No. 123-8, PageID.12053. On January 22, 2025, Carhartt produced a native excel file for the newly disclosed survey. ECF No. 123-10, PageID.12095. It also turned out—as suggested by the name "Carhart-NEW"—that there was an *even earlier* survey. According to Carhartt's counsel: "From what we understand, the likely reason for the 'Carhartt-NEW' nomenclature is that there was an earlier draft questionnaire that

---

[2] The file for Survey Two was entitled "Carhart-New-3XX." ECF No. 67, PageID.1212.

was soft-launched for testing and, likely due to an administrative problem, was revised (i.e., became 'Carhartt-NEW') and then discarded." *Id.*

Based on the email from Carhartt's counsel, one might think that the soft-launch survey was just a prototype. But Maronick testified that soft-launched surveys yield *actual data* that he reviews. *See* ECF No. 123-4, PageID.12017. Usually, he pauses soft-launch surveys once they accrue around forty respondents and then reviews the data. *See id.*

Altogether, Maronick administered at least four consumer confusion surveys, only some of which were disclosed in his report and only some of which have been produced:

|  | "Soft Launch Survey" | "Carhart-NEW"[3] | Survey One[4] | Survey Two[5] |
| --- | --- | --- | --- | --- |
| Date of Survey | Unknown | 10/1/24 | 10/4/24 | 10/10/24 |
| Disclosed in Expert Report? | No | No | Yes | Yes |
| Produced? | No | Yes | Yes | Yes |

The motion to compel, filed on February 7, 2025, concerns the earliest survey—*i.e.*, the soft-launch survey—which was not mentioned in Maronick's expert report, and which Carhartt argued should not be produced.

---

[3] ECF No. 123-8, PageID.12053.
[4] ECF No. 67, PageID.1175.
[5] ECF No. 67, PageID.1212.

3

To understand why Costa wants the Soft Launch Survey, the Court needs to explain how Maronick uses surveys. Costa presented evidence that Maronick used results from "Carhart-NEW" to manipulate the demographics of Survey One and Survey Two. For example, from "Carhart-NEW" to Survey One and Survey Two, Maronick dropped the percentage of respondents aged 25–34, nearly doubled the percentage of respondents 65 and older, and increased the percentage of male respondents:

|  | "Soft Launch Survey" | "Carhart-NEW"[6] | Survey One[7] | Survey Two[8] |
|---|---|---|---|---|
| Percentage of respondents 25–34 | unknown | 19.41% | 6.75% | 4.33% |
| Percentage of respondents 65 and older | unknown | 20.78% | 40.93% | 50.33% |
| Percentage of male respondents | unknown | 50% | 65.5% | 64% |

Maronick also testified that he used the results of Survey One to manipulate Survey Two. ECF No. 123-4, PageID.12024. For example, in Survey One, California residents made up 25.32% of the respondents—the largest representation by any single state. ECF No. 67, PageID.1136. In Survey Two, however, California residents made up 0% of the respondents. *Id.* at PageID.1137.

---

[6] ECF No. 123-8, PageID.12056, 12083.
[7] ECF No. 67, PageID.1136.
[8] ECF No. 67, PageID.1137.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires production of "facts or data considered by [an expert] witness" in their report. Experts are not, however, required to produce draft reports or disclosures. Fed. R. Civ. P. 26(b)(4)(B).

And parties may move to compel production after the close of discovery. *See* Fed. R. Civ. P. 16(b). Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." "The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (cleaned up).

## DISCUSSION

To begin, the Court will address why Federal Rule of Civil Procedure 26 requires production of Maronick's soft-launch survey. Then, the Court will explain why Costa provided good cause to demand production of the survey, even though the discovery period is over.

I. <u>Requirements of Rule 26</u>

The parties dispute whether Federal Rule of Civil Procedure 26 requires production of the soft-launch survey. On the one hand, Rule 26(a)(2)(B)(ii) requires disclosure of the "facts or data considered" by an expert witness. On the other hand, Rule 26(b)(4)(B) shields "drafts of any [expert] report or disclosure required under Rule 26(a)(2)." For the reasons below, the Court finds that the survey counts as "facts or data considered" by Maronick and must therefore be produced.

At the outset, the Court notes a split of persuasive authority. Some courts have granted motions to compel preliminary survey materials under Rule 26(a)(2)(B)(ii). *See, e.g.*, *Robocast, Inc. v. Apple, Inc.*, No. CV 10–1055, 2013 WL 12155813, at *2–3 (D. Del. Sept. 18, 2013), *report and recommendation adopted*, No. CV 10-1055, 2013 WL 12156411 (D. Del. Oct. 17, 2013) (granting motion to compel pilot survey notwithstanding declaration from expert witness asserting that, by the time he drafted his report, he had already deleted the pilot survey and did not remember its contents); *FTC v. Nat'l Urological Grp., Inc.*, No. 1:04-cv-3294, 2016 WL 11791898, at *2 (N.D. Ga. Aug. 25, 2016) (granting motion to compel expert's draft survey questionnaires); *cf. Hanak v. DynCorp, Inc.*, No. SA-09-CA-752-FB, 2013 WL 12385017, at *10 (W.D. Tex. June 18, 2013) (concluding that Rule 26(a)(2)(B)(ii) required production of expert's practice simulator tests).

Other courts, however, have denied similar motions under Rule 26(b)(4)(B). *See, e.g.*, *SiteLock, LLC v. GoDaddy.com, LLC*, No. CV 3:21-MC-00042-X, 2022 WL 16577869, at *1–2 (N.D. Tex. Oct. 31, 2022), *aff'd sub nom. SiteLock, L.L.C. v. GoDaddy.com, L.L.C.*, No. 22-11109, 2023 WL 4015117 (5th Cir. June 13, 2023) (concluding that magistrate judge's denial of motion to compel pilot survey was not clearly erroneous or contrary to law because the survey was "at least arguably" a draft disclosure); *Nike, Inc. v. By Kiy LLC*, No. 23CIV2431, 2023 WL 8520486, at *3 (S.D.N.Y. Dec. 8, 2023).

Considering all of those authorities and others, the Court concludes that Maronick's soft-launch survey must be produced.

6

First, as a matter of textual interpretation, the Court fails to see how a soft-launch survey could count as a draft of an expert *report* or *disclosure* per Rule 26(b)(4)(B). According to Maronick's deposition, he likely released the soft-launch survey, received dozens of responses, and reviewed those responses. The most plausible understanding of the survey is that it generated *facts* or *data* that fall under Rule 26(a)(2)(B)(ii).

Second, Maronick considered the soft-launch survey. Courts interpret Rule 26(a)(2)(B)(ii) broadly to cover any material considered by an expert in preparing a report. *See, e.g.*, *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l, Inc.*, No. 13-cv-11544, 2015 WL 348710, at *2 (E.D. Mich. Jan. 26, 2015) ("[P]er the 2010 amendment to Rule 26, the disclosure obligation for experts is interpreted broadly, requiring, not only the material relied upon, but also any material considered by the expert in producing the report to be disclosed.").[9] Carhartt argued that Maronick did not *really* consider the soft-launch survey, so it was not discoverable. But Courts do not just accept the subjective intent of the expert, even when they say they never considered the matter. *See Robocast*, 2013 WL 12155813, at *2–3. Here, Maronick admitted that he considers the results of soft-launch surveys. *See* ECF No. 123-4, PageID.12018.

Even assuming that experts might not always have to produce early surveys, Maronick's method of survey design mandates production of *this specific* survey. Given Maronick's history of using non-disclosed surveys to change the survey

---

[9] According to the Advisory Committee notes to the 2010 amendment, Rule 26(b)(4)(B) and (C) do "not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions."

7

universe, his evasive conduct in the litigation, and his deposition testimony admitting that he reviews results from soft-launch surveys, the Court finds that there is a strong likelihood that Maronick used the results from the soft-launch survey to change the parameters of "Carhart-NEW," Survey One, and Survey Two.

The Court recognizes that different survey populations can yield different results. From "Carhart-NEW" to Survey One and Survey Two, Maronick made substantial demographic changes: the percentage of respondents aged 25–34 plummeted, the percentage of respondents 65 and older nearly doubled, and the percentage of male respondents jumped to 65%.[10]

Thus, for the reasons above, under the broad definition of consider, the surveys are discoverable under Rule 26.

II.  Good Cause

Carhartt contended that Costa did not diligently pursue the requested discovery. ECF No. 133, PageID.12279–12281. Discovery has indeed closed. ECF No. 56, PageID.701. But, as discussed above, Carhartt did not produce "Carhart-NEW" until four days *after* the expert deposition deadline. ECF No. 123-6, PageID.12038. By that point, Costa had already deposed Maronick, Costa had already filed its motion to exclude Maronick's testimony, and Costa's rebuttal expert—Sarah Butler—had already produced her report in opposition to Maronick's

---

[10] Perhaps Maronick has a good explanation for stacking Survey One and Survey Two with older men. But Costa should be able to cross-examine Maronick on *why* the universe for his surveys changed so drastically, including whether surveys from before "Carhart-NEW" resulted in similar changes. To do so, Costa needs all the consumer confusion surveys.

report. *See* ECF No. 123-4, PageID.12012 (deposition of Maronick held November 22, 2024); ECF No. 66 (motion to exclude filed December 16, 2024); ECF No. 67-2, PageID.1331 (Butler's expert rebuttal report dated December 5, 2024). Carhartt, however, did not produce the native excel file for "Carhart-NEW" until January 22, 2025. ECF No. 123-10, PageID.12095. And Carhartt did not clearly disclose the existence of the earlier "soft-launch survey" until January 22, 2025. *See id*. Soon thereafter, on February 7, 2025, Costa filed its motion to compel.

On those facts, Carhartt cannot complain that Costa did not diligently pursue the discovery. Costa did not have the information needed to file a motion before late January 2025. And Costa consistently asked for all of Maronick's surveys for the matter in litigation. The Court will therefore excuse the late filing for good cause shown and grant the motion to compel.

Finally, in the event that Carhartt and Maronick are unable to produce the soft-launch survey, Costa asked for leave to serve third party subpoenas on Qualtrics, C&T Marketing, Steve Calupy, and Vanguard to get the survey, its data, and associated questionnaires. ECF No. 123, PageID.12000; *see also* ECF No. 123-4, PageID.12013–12027 (suggesting that others may have copies of the survey). Because Carhartt represented that the soft-launch survey may have been discarded by Maronick, ECF No. 123-10, PageID.12095, the Court agrees that third party subpoenas may be necessary. Although subpoenas are discovery devices that must adhere to "the deadlines of a court's scheduling order," *Allstate Ins. Co. v. Papanek*, 309 F. Supp. 3d 511, 514 (S.D. Ohio 2018), for the reasons discussed above, the Court

9

will extend the timeline for the service of subpoenas related to the soft-launch survey. The Court encourages to the parties to act promptly in producing and securing the survey materials.

**WHEREFORE**, it is hereby **ORDERED** that Costa's motion to compel [123] is **GRANTED**.

**IT IS FURTHER ORDERED** that Carhartt must **PRODUCE** the above-mentioned consumer confusion survey data and questionnaires, including for soft-launch surveys, **no later than April 18, 2025**.

**IT IS FURTHER ORDERED** that to the Court will extend the time to **SERVE** third party subpoenas to obtain the above-mentioned consumer confusion survey data and questionnaires, including for soft-launch surveys, **until April 21, 2025**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 16, 2025