UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARHARTT, INC.,

              Plaintiff,

v.

COSTA DEL MAR, INC.,

              Defendant.

_____/

Case No. 2:21-cv-11844

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING**
**MOTIONS FOR SUMMARY JUDGMENT [79, 90]**

Carhartt sued Costa for (1) trademark infringement; (2) unfair competition and false designation of origin; (3) trademark dilution; and (4) common law trademark infringement and unfair competition. ECF No. 59, PageID.741–745. In its answer, Costa asserted the affirmative defenses of laches and acquiescence. ECF No. 60, PageID.784–785.

After the close of discovery, Carhartt moved for summary judgment on all claims except for trademark dilution. ECF No. 90, PageID.5746. Meanwhile, Costa moved for summary judgment on all claims based on laches. ECF No. 79, PageID.2556. Costa also moved for summary judgment on the trademark dilution claim based on a lack of fame. *Id.* at PageID.2565. And both parties moved for summary judgment on Costa's acquiescence defense. ECF No. 90, PageID.5746; ECF No. 79, PageID.2556.

1

The Court held a hearing on the dueling motions on April 23, 2025. In addition to the cross-motions, the parties filed motions to exclude expert witness testimony, which the Court will address in a separate Order.

For the following reasons, the Court will deny the motions for summary judgment. After construing the facts in the light most favorable to the respective non-moving parties, the evidence on both sides creates genuine disputes of material fact.

## BACKGROUND

Carhartt is a Michigan-based apparel manufacturer renowned for its premium workwear. ECF No. 90, PageID.5746. Costa sells sunglasses, apparel, and accessories to "water-loving customers." ECF No. 79, PageID.2544–2545. Although Costa began as a sunglasses company, the parties agree that Costa started selling apparel around 2010. ECF No. 79, PageID.2545; ECF No. 112, PageID.10050. As of 2014, apparel represented approximately 10% of Costa's sales. ECF No. 112-6, PageID.10169.

Today, both Carhartt and Costa have federally registered trademarks for clothing:



ECF No. 59, PageID.750; ECF No. 80-3, PageID.3285. Although Carhartt has a registration for its mark without the word "Carhartt," Costa does not have a registration for a mark without its name. *See id.*

In its complaint, Carhartt alleged that "Costa currently sells identical clothing and related accessories under a mark that is nearly identical to Carhartt's mark." ECF No. 59, PageID.736. The record shows that, for some subset of apparel items, Costa sold goods with its mark displayed prominently, sometimes with the Costa name next to the mark and sometimes without. *See, e.g.*, ECF No. 112-8 (2014 workbook), ECF No. 112-9 (2018 workbook), ECF 91-39 (2022 workbook). From those sales, Carhartt alleged various harms: damage to its goodwill and reputation, impairment of the distinctiveness of the Carhartt mark, etc. ECF No. 59, PageID.740. Costa denied any likelihood of consumer confusion between the marks. ECF No. 118.

Carhartt filed suit on August 9, 2021. ECF No. 1. The parties, however, dispute when Carhartt's trademark infringement claim ripened. On the one hand, Carhartt argued that its claim did not ripen until July 16, 2019, which is when Costa filed an opposition at the United States Patent and Trademark Office concerning Carhartt's application to use its mark on protective eyewear.[1] ECF No. 112, PageID.10052. On the other hand, Costa argued that Carhartt's claim ripened far earlier, likely in the mid-2010s. *See* ECF No. 79, PageID.2545–2547. Costa was acquired by Luxottica in 2018, ECF No. 112, PageID.10062, an event that Carhartt argued was a turning point for the Costa brand.

---

[1] In 2019, when Costa opposed Carhartt's application, it was *Costa* who alleged that there was a "likelihood of confusion" between the Carhartt mark and the Costa mark on protective eyewear. ECF No. 91-40, PageID.7828. Then, in paragraph thirteen of the answer, it was *Carhartt* who denied that the registration would damage Costa by "creating a continued likelihood of confusion, mistake, and deception among the consuming public." ECF No. 91-40, PageID.7832.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Court will first address Carhartt's motion for summary judgment on all claims except trademark dilution because they rise and fall under the same legal standard. Then the Court will address Costa's motion for summary judgment on the

laches defense. Next, the Court will consider Costa's motion for summary judgment on the trademark dilution claim and finally the cross-motions for summary judgment on the acquiescence defense.

I.    All Claims Except Trademark Dilution

Carhartt moved for summary judgment on its claims for trademark infringement, unfair competition and false designation of origin, and common law trademark infringement and common law unfair competition. ECF No. 90, PageID.5746. Under the Lanham Act, courts use the same test for trademark infringement claims and unfair competition/false designation of origin claims—the likelihood of confusion between the two marks. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). The same test applies for the common law claims under state law. *Techs., Inc. v. Vision IT Servs. USA, Inc.*, 156 F. Supp. 3d 870, 879 (E.D. Mich. 2016) ("The factors to consider in a common law claim under Michigan state law are the same, and the court uses the same likelihood of confusion test.").

Trademark infringement involves a two-step inquiry: (1) whether the owner has a valid, protectable mark, and (2) whether the alleged infringing mark is likely to cause confusion. *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012). Here, Costa did not dispute that Carhartt has a valid, protectable trademark for use on clothing, *see generally* ECF No. 118, so the Court focuses on consumer confusion.

The Sixth Circuit uses an eight-factor test for likelihood of consumer confusion: (1) strength of the mark; (2) relatedness of the goods or services; (3) similarity of the

marks; (4) actual confusion; (5) marketing channels used; (6) degree of consumer care; (7) intent in selecting of mark; and (8) likelihood of expansion. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007). Not every factor will be relevant in every case, and the factors need not be applied mathematically. *Id.* Likelihood of confusion is a mixed question of law and fact. *Id.* The party opposing summary judgment must establish "that there are genuine factual disputes concerning [the confusion] factors which may be material in the context of the specific case." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

Here, Costa established that there is a genuine dispute of material fact on several, material confusion factors. The Court need not review every factor because the likelihood of confusion analysis is not a bean counting exercise, and the factors themselves are interrelated in effect. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Accordingly, the Court will focus on just a few of the material factors that, when the facts are viewed in the light most favorable to the non-moving party, preclude granting summary judgment for Carhartt.

A.    *Similarity of the Marks*

First, Costa established a genuine dispute of material fact on the similarity of the Costa and Carhartt marks. For this factor, courts cannot simply look at the marks side-by-side in the abstract. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988). Rather, courts must determine, "in the light of what occurs in the marketplace,

6

whether the mark will be confusing to the public when singly presented." *Id.* (quotation and quotation marks omitted). Courts must therefore give due attention to how the marks "appear in commercial context." *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 433 (6th Cir. 2017). Usage of a mark in advertising can be highly probative. 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:58 (5th ed. 2025) [hereinafter "McCarthy"].

  1. *The Marks*

Carhartt argued that Costa's logo is "nearly identical" to Carhartt's logo. ECF No. 90, PageID.5760. Carhartt pointed out what it called "obvious visual similarities" between the marks, and it alleged that the Costa mark is just the Carhartt mark "turned 45 degrees clockwise." *Id.* Citing photographs, Carhartt concluded that the logos leave a "similar overall commercial impression." *Id.*; *see* ECF No. 91-49, PageID.8219; ECF No. 91-38, PageID.7756. Carhartt also noted Costa's use of its logo on a hat patch that allegedly mimicked Carhartt's use of its logo on a patch. ECF No. 59, PageID.737.

In response, Costa highlighted the differences between the marks. ECF No. 118, PageID.10595. Sure, the marks both conveyed the letter C. But Costa said that the logos have serious differences. The Carhartt mark resembles a cornucopia, and it ends in a "large, distinct and abrupt straight line." *Id.* In contrast, the Costa mark resembles a wave, and it is fully rounded. *Id.* Costa also pointed out that its mark is "typically depicted in blue, or with Costa's signature blue shades nearby." ECF No. 118, PageID.10596; *see* ECF No. 118-7, PageID.10722 (brand guide); ECF

No. 118-8, PageID.10740, 10747-10748 (2019 brand standards & toolkit). Meanwhile, the Carhartt mark is usually depicted in yellow, and Carhartt prohibits use of its mark in blue. ECF No. 118-32, PageID.11211, 11215; *see Progressive Distrib. Servs.*, 856 F.3d at 433 (considering UPS's distinctive color scheme as part of the mark-similarity analysis). These differences, construed in the light most favorable to Costa, could well support a finding that the marks are not similar.

Costa also noted that many of its products have the Costa name displayed prominently, which reduces the likelihood of confusion. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 634 (6th Cir. 2002) (noting that the presence of a brand name alongside a contested mark "diminishes the likelihood of confusion created by the comparable marks and reduces the importance of [the similarity of the marks] factor").

### 2. The Marketplace

Turning to the marketplace, Costa provided evidence that clear point-of-sale displays in major retailers—*i.e.*, the distribution channel where the brands appear most directly in competition—may cure or ameliorate any confusion between the brands. *See, e.g.*, ECF No. 118-19, PageID.11034 (photograph of Carhartt display at Academy); ECF No. 79-21, PageID.3035, 3041, 3043 (photographs of representative Costa displays at approximately one hundred Academy locations). By loudly identifying brands for consumers, point-of-sale displays might assist with any confusion between the marks.

Additionally, at some retailers, Carhartt is even siloed in a heavily branded section called "Workwear." ECF No. 118-20, PageID.11038. Based on the evidence cited in the briefing, it is uncertain whether Costa or Carhartt goods are always sold at major retailers as part of a larger Costa or Carhartt display. To the extent that Carhartt products are siloed in workwear sections, that too would likely ameliorate any confusion.

In sum, when the facts are construed in the light most favorable for Costa, the factfinder could conclude that the marks are not similar, even if they are both on apparel items. Moreover, the information in the record is not conclusive on how the marks appear to consumers in commerce. Serious factual disputes remain concerning how consumers encounter the marks in a variety of products, colors, and formats. *See Daddy's Junky Music Stores*, 109 F.3d at 284 ("The degree of similarity between "Daddy's" and "Big Daddy's Family Music Store," however, remains an issue of fact.").

B.    *Marketing Channels Used*

Second, Costa established a genuine dispute of material fact on the parties' marketing channels.

For this factor, courts consider "the similarities or differences between the predominant customers of the parties' respective goods or services" as well as "whether the marketing approaches employed by each party resemble each other." *Daddy's Junky Music Stores*, 109 F.3d at 285.

*Predominant Customers*. Carhartt cited a deposition transcript as evidence that Costa sells at some of the same big-box retailers as Carhartt, namely Dick's

Sporting Goods, Academy, and Bass Pro/Cabela's. ECF No. 90, PageID.5762 (citing ECF No. 91-41, PageID.7858). And Carhartt provided evidence that its products overlapped with Costa's products in type. *Compare* ECF No. 91-3, PageID.5891 (Carhartt's "Knit Cuffed Beanie"), *with* ECF No. 91-38, PageID.7756 (Costa's "Cuff Beanie"). But Carhartt provided no evidence that its products overlap with Costa's in terms of price. In fact, the cited portions of the Carhartt catalog—provided in Carhartt's reply brief—do not have prices. *See* ECF No. 91-3, PageID.5891, 5851, 5827. In addition, Carhartt's own expert witness seriously questioned the degree to which Costa and Carhartt products overlapped in the 2010s. *See* ECF No. 75, PageID.2398–2399.

The cited evidence thus does not clearly show the extent of the alleged overlap, either in the past or in the present. And the price point of the products, which is relevant to evaluating whether the brands target the same customers, is also unclear.

*Marketing.* The marketing of the brands only further underscores what may be serious differences in the brands. Costa cited evidence that the marketing of the brands differs starkly:



*Compare* ECF No. 79-25, PageID.3121, *with* ECF No. 88-2, PageID.5695. Costa also cited testimony suggesting that the companies target different customers. *Compare* ECF No. 118-5, PageID.10657 (indicating that Costa targets people who are "passionate about the water," including fishermen and southern college students), *and* ECF No. 118-6, PageID.10693 (naming Costa's target consumer as "the waterman," *i.e.*, someone who loves the "coastal culture or fishing lifestyle"), *with* ECF No. 118-14, PageID.10957 (noting that Carhartt's mission statement is "to provide best-in-class apparel for the active worker"), *and* ECF No. 118-16, PageID.10973 (noting that the voice of Carhartt is "the guy next to you swinging a sledge hammer," a "master craftsman" who has "been on the job for 25 years"). Based on the evidence presented, a reasonable person could conclude that the products are marketed differently, thus targeting, and ultimately attracting, different customers.

Furthermore, there are some differences in the distribution channels of Costa and Carhartt products. *See* ECF No. 67-3, PageID.1889. And a difference in distribution can evidence a different customer base. *See Leelanau Wine Cellars*, 502

F.3d at 519 (holding that different distribution channels of two wine companies resulted in lower likelihood of consumer confusion); *Detroit Coffee Co., LLC v. Soup For You, LLC*, 396 F. Supp. 3d 754, 769 (E.D. Mich. 2019) (noting that distribution is part of the marketing channels factor rather than the relatedness factor). Indeed, the overlap of sales is limited to a subset of large retailers like Academy, Dick's Sporting Goods, and Bass Pro/Cabela's. *See* ECF No. 67-3, PageID.1890. And even within those stores, as noted above, it remains unclear to what extent Carhartt and Costa share the same customers—*i.e.*, how much the leisure-focused Costa competes with the work-focused Carhartt.

Thus, taking the facts in the light most favorable to Costa, a factfinder could reasonably determine that the customers for each brand and marketing approaches of each brand are distinct.

### C.    *Actual Confusion*

Third, Costa established a genuine dispute of material fact on actual consumer confusion. Both Carhartt and Costa commissioned expert reports on consumer confusion that had wildly different results.

According to Carhartt's expert, Thomas Maronick, there is confusion between the Carhartt mark and the Costa mark. ECF No. 67, PageID.1133. Maronick administered two surveys. He found that, in regions with mixed Carhartt brand awareness as well as Carhartt-dominated regions, there is "confusion as to whether Costa is associated or affiliated with Carhartt." *Id.* And he found that, in Carhartt-

dominated regions, when the Costa logo is shown in isolation, "there is a high degree of net confusion as to whether Costa is associated or affiliated with Carhartt." *Id.*

But according to Costa's expert, Sarah Butler, there is *no* confusion between the Carhartt mark and the Costa mark. ECF No. 67-2, PageID.1267. In addition to critiquing the methodology of Maronick's surveys, *see id.* at PageID.1260–1263, Butler conducted two of her own surveys. *Id.* at PageID 1264–1267. Based on those surveys, she concluded that "consumers are not at all likely to confuse" the two marks. *Id.* at PageID.1267.

Other courts, confronted with dueling consumer confusion surveys, have found that a genuine dispute of material fact existed and that the dispute—in conjunction with other issues—precluded summary judgment. *See, e.g.*, *Express, Inc. v. Sears, Roebuck & Co.*, 840 F. Supp. 502, 508 (S.D. Ohio 1993); *In-N-Out Burgers v. Doll n' Burgers LLC*, No. 20-11911, 2022 WL 791924, at *28 (E.D. Mich. Mar. 14, 2022).[2]

*D. Conclusion*

Carhartt is not entitled to summary judgment on its claims for trademark infringement and unfair competition. Material fact disputes are abundant upon reviewing just a few of the factors, *supra*. For example, the factfinder could conclude—taking the facts in the light most favorable to Costa—that the marks are

---

[2] On its own, a dispute of material fact on actual confusion might not preclude the Court from granting summary judgment. *See ServPro Intell. Prop., Inc. v. Blanton*, 451 F. Supp. 3d 710, 725 (W.D. Ky. 2020). Nevertheless, in conjunction with the disputes regarding the similarity of the marks and the marketing channels, the factual dispute concerning actual confusion further bolsters the Court's denial of summary judgment.

not similar, that the marketing channels are distinct, and that no actual confusion exists. The Court will therefore deny summary judgment for Carhartt on these claims.

## II. Laches Defense and Progressive Encroachment

Costa moved for summary judgment based on the defense of laches. ECF No. 79. In response, Carhartt argued, in part, that any delay in filing suit was excused by the doctrine of progressive encroachment. ECF No. 112, PageID.10060–10063. For the reasons below, the Court will deny the motion.

### A. *Laches*

In lieu of a statute of limitations, the Lanham Act endorses laches as a limit on how long trademark plaintiffs can wait before filing suit. *See McCarthy* at § 31:1. The party asserting a laches defense must prove "(1) lack of diligence by the party against whom the defense is asserted [*i.e.*, delay], and (2) prejudice to the party asserting it." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002).

"Generally, when applying laches, courts will look to the analogous statute of limitations to determine whether a delay was unreasonable or prejudicial." *McKeon Prods., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 744 (6th Cir. 2021). Here, the analogous Michigan statute of limitations is three years.[3] *See Nartron Corp.*, 305 F.3d at 408. And so, if Carhartt filed suit within the three-year period,

---

[3] Carhartt did not contest Costa's use of the Michigan statute of limitations for injury to personal property. *See generally* ECF No. 112.

"there is a strong presumption that [its] claim is timely and not prejudicial." *McKeon Prods.*, 15 F.4th at 744. If, however, Carhartt filed suit after the three-year period, its delay is presumptively "unreasonable and prejudicial to the defendant." *Id.*

The Court measures the period of delay from when Carhartt "knew or should have known" that it had "a provable claim for infringement." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 574 (6th Cir. 2000). Because Carhartt filed suit on August 9, 2021, the key question is whether Carhartt knew or should have known about the infringement before or after August 9, 2018.

### B.    *Progressive Encroachment*

In analyzing delay, courts look to the doctrine of progressive encroachment. *A.I.G. Agency, Inc. v. Am. Int'l Grp., Inc.*, 33 F.4th 1031, 1034 (8th Cir. 2022). Progressive encroachment is one of the factors that courts consider in deciding whether there was inexcusable delay. *Id.*[4] Under the doctrine of progressive encroachment, trademark owners get "some latitude in the timing of [their] bringing suit." *Kellogg*, 209 F.3d at 571. The doctrine measures delay "not from when the claimant first learned of the potentially infringing mark, but from when such infringement became actionable and provable." *A.I.G.*, 33 F.4th at 1034 (cleaned up). "Implicit in a finding of laches or acquiescence is the presumption that an underlying claim for infringement existed at the time at which we begin to measure the plaintiff's

---

[4] The Sixth Circuit has described progressive encroachment as "an offensive countermeasure to the affirmative defenses of laches and acquiescence." *Kellogg*, 209 F.3d at 571.

delay." *Kellogg*, 209 F.3d at 569. Courts evaluating progressive encroachment must therefore "perform a likelihood of confusion analysis." *Id.* at 573.

### C.   *Uncertainty Over Consumer Confusion*

As discussed above, there are several genuine disputes of material fact on whether there is a likelihood of confusion between the Carhartt and Costa marks. And the Court doubts that it can grant summary judgment for a defendant on the basis of laches when it is unclear whether a likelihood of confusion between the two marks ever existed.

For example, in *Ray Communications, Inc. v. Clear Channel Communications*, 760 F. Supp. 2d 544 (E.D.N.C. 2010), the district court granted summary judgment in favor of the Defendant on its laches defense. *Id.* at 555. On appeal, however, the Fourth Circuit reversed, remanded, and explained that a defendant asserting a laches defense on summary judgment must show "that at some identifiable point in time a likelihood of confusion existed and that [Plaintiff] unreasonably delayed thereafter in taking responsive legal action." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 297, 301–02 (4th Cir. 2012).

Other courts have reached similar conclusions. In *A.I.G. Agency, Inc. v. American International Group*, No. 4:17-cv-1502, 2020 WL 3000427 (E.D. Mo. June 4, 2020), the district court granted summary judgment in favor of the Defendant on its laches defense. *Id.* at *10. On appeal, however, the Eighth Circuit determined that the district court abused its discretion in applying laches. *A.I.G. Agency, Inc. v. Am. Int'l Grp., Inc.*, 33 F.4th 1031, 1036 (8th Cir. 2022). The Eighth Circuit emphasized

16

that "[a] trademark infringement claim becomes actionable and provable when the infringer's use of the mark becomes likely to confuse customers as to the source or sponsorship of the goods or services." *Id.* at 1035. Because the Defendant bore the burden of showing inexcusable delay, the Defendant also bore "the burden of showing there was a likelihood of confusion, under the [multi]-factor [consumer confusion] analysis, at some past time from which [the Plaintiff] inexcusably delayed in bringing its infringement claim." *Id.* Among other issues, the Defendant had failed to present sufficient evidence of past actual confusion between the marks, which is one of the factors for consumer confusion. *Id.* at 1036.

The Court is aware of at least one district court that has come out the other way. In *Ultrasonic Power Corp. v. Crest Ultrasonics Corp.*, No. 07-cv-50220, 2010 WL 11883647, (N.D. Ill. Mar. 1, 2010), the court determined that "a genuine issue of material fact preclude[d] a determination on whether" infringement occurred. *Id.* at *4. Nevertheless, the Court proceeded to assume, without deciding, that Defendant infringed on the marks, in evaluating the laches argument, and the Court granted summary judgment for Defendant based on laches. *Id.* at *4–5, 8.

But in *Ultrasonic*, the district court did not have to consider any argument of progressive encroachment. *See generally* 2010 WL 11883647. In *A.I.G.* and *Ray*, however, progressive encroachment was a large part of the laches analysis. *See generally* 33 F.4th 1031.[5] And the Sixth Circuit has instructed that, when examining

---

[5] In *Ray*, even though the Fourth Circuit did not explicitly use the words "progressive encroachment," it still looked to the point at which confusion "loom[ed] large" between the two marks, 673 F.3d at 302, which is the touchstone for progressive encroachment

progressive encroachment, courts "must perform a likelihood of confusion analysis." *Kellogg*, 209 F.3d at 573. Having already determined that there are genuine disputes of material fact regarding critical likelihood-of-confusion factors, the Court cannot grant summary judgment on the laches defense.[6] *See Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) ("When the record before the district court on a motion for summary judgment shows factual issues in dispute that could affect the equity of the application of laches to bar the claim, the district court must deny the motion and permit the parties to present their proof.").

### D.    Substantial Change

Assuming, however, that a likelihood of consumer confusion *did* exist during the 2010s, the Court doubts that progressive encroachment would apply.

Progressive encroachment "requires something about the defendant's use of the mark to have changed significantly." *Nartron Corp*, 305 F.3d at 410. It can apply when a defendant has made "certain changes to the appearance of its mark, expanded its marketing efforts, or entered into new areas of business that directly competed

---

in the Sixth Circuit. *See Kellogg*, 209 F.3d at 570–71 ("Because the doctrines of laches and acquiescence must assume some underlying infringement, we recognize progressive encroachment as simply giving the plaintiff some latitude in the timing of its bringing suit, that is, waiting until the 'likelihood of confusion looms large' to bring the action.") (quoting *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996)).

[6] The likelihood of confusion analysis in the context of its effect on laches might be backwards looking; nonetheless, the Court anticipates that it will encounter the same factual disputes at trial. And Costa did not present evidence that a likelihood of consumer confusion existed prior to 2018.

with the trademark owner." *Id.* But natural growth of an existing business is not enough. *See, e.g.*, *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 449 (3d Cir. 2024); *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 991 (9th Cir. 2009); *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 06-cv-3508, 2007 WL 2914452, at *2 (2d Cir. Oct. 5, 2007); McCarthy at § 31:20 ("[Progressive encroachment] must be something more than a normal expansion in quantity within its original line of business that most businesses will experience over time.")

Here, Carhartt's evidence of significant change sounded an awful lot like simple business growth, which is not enough for progressive encroachment. For example, Carhartt cited the increased kinds of apparel items offered by Costa. ECF No. 112, PageID.10062. But in *Black Diamond Sportswear*, the Second Circuit held that progressive encroachment did not apply in a trademark dispute between two skiwear companies, even though the products offered by the alleged infringer changed over time. 2007 WL 2914452, at *2; *see Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 1:03-cv-278, 2005 WL 2076279, at *2 (D. Vt. Aug. 26, 2005) (discussing how both companies started out selling gloves and mittens but, over time, the alleged infringer moved into selling fleece skiwear like vests and alpine pants). The Second Circuit emphasized that "progressive encroachment only excuses delay in filing suit where defendant, after beginning its use of the mark, *redirected* its business so that it more squarely competed with plaintiff." *Black Diamond*, 2007 WL

2914452 at *2 (quotation and quotation marks omitted). When two businesses competed directly from the start, progressive encroachment does not apply. *See id.*

And so, even if Costa started selling button-down tops, quarter zips, outerwear, pants, or shorts, ECF 91-39, PageID.7803–PageID.7809, that would not change the reality that Carhartt and Costa already competed in the apparel space through hats and shirts. Again, when parties are already competitors, progressive encroachment generally does not apply, unless the competition is de minimis. *See Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1103 (9th Cir. 2004).

Carhartt also cited evidence that, long before the present lawsuit, Costa was selling millions of dollars' worth of apparel. In particular, Carhartt cited a brand strategy presentation showing that Costa had already achieved around $10 million in annual apparel sales around 2013. ECF No. 112-6, PageID.10169 (showing apparel makes up to 10% of total sales), 10180 (showing $100 million in total sales). To be sure, questions remain about the exact numbers of infringing products and the geographic scope of those sales. *See generally* ECF No. 67-3 (Costa's expert witness Ryan LaMotta's report); ECF No. 84 (motion to exclude LaMotta's opinion and testimony); ECF No. 75, PageID.2375–2407 (Carhartt's rebuttal report to the LaMotta report). But millions of dollars in existing apparel sales in the early 2010s tend to suggest that Costa was very much already in the clothing business, which would cut against a finding of progressive encroachment.

Costa even presented evidence that Carhartt had actual knowledge of Costa's presence in the clothing space in 2013 and 2014. Specifically, in the portion of field

audits entitled "Competitive Information," Carhartt employees identified Costa as a competitor. ECF No. 79-7, PageID.2777 (2013 report noting that "[t]ees are the talk in the south. Bright colors from Salt Life, Columbia, Guy Harvey, Duck Dynasty, and Costa and more and retailing extremely well"); ECF No. 79-8, PageID.2808 (2014 report noting that "Costa, Guy Harvey, and Salt Life continue to invade the mountains—not only box stores like Belk but also smaller stores"). The reports were sent to Carhartt CEO Mark Valade, along with other executives at the company. ECF No. 79-5, PageID.2734; ECF No. 79-6, PageID.2750.

That said, Carhartt provided some limited evidence suggesting change over time of the Costa brand. *See, e.g.*, ECF No. 112, PageID.10062 (citing the workbooks as evidence of growth in the number of products offered by Costa); ECF No. 91-41, PageID.7926 (suggesting that Costa products without the Costa name next to the Costa mark increased); ECF No. 112-9, PageID.10277 (introducing new product with the Costa mark in orange).

At trial, the Court will give Carhartt's evidence the appropriate weight. For now, however, it suffices to say that summary judgment is not appropriate on Costa's laches defense based on the genuine disputes of material fact regarding the likelihood of confusion.

III.  Trademark Dilution

Costa moved for summary judgment on Carhartt's trademark dilution claim. ECF No. 79. To prevail on a trademark dilution claim under the Lanham Act, Carhartt must prove "(1) its mark is famous, (2) its mark is distinctive, (3) the

defendant used the mark in commerce, (4) after it became famous, and (5) the defendant's use is likely to cause dilution of the plaintiff's mark." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 697 (W.D. Ky. 2010) (citing *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006)). Here, Costa alleged that summary judgment is appropriate because Carhartt has not and cannot show that its mark is famous.

For a mark to qualify as famous, the mark must be "widely recognized by the *general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). To determine the degree of recognition, courts look to the "duration, extent, and geographic reach of advertising and publicity of the mark;" the "amount, volume, and geographic extent of sales of goods or services offered under the mark; and "the extent of actual recognition of the mark." *Id.* § 1125(c)(2)(A)(i)–(iii).

Fame, however, is a heavy burden. Some marks can be very popular but still fail to qualify as famous. *See, e.g., Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 673–79 (W.D. Tex. 2008) (granting summary judgment against the University of Texas on its trademark dilution claim because the school failed to show that its longhorn silhouette mark was famous among the general consuming public of the United States rather than the niche markets of Texas denizens and football fans); *Maker's Mark Distillery*, 703 F. Supp. 2d at 699–700 (finding, after a bench trial, that Maker's Mark's red wax seal was not famous for purposes of trademark dilution because the company failed to

show that it was "in the same league as Nike, Pepsi, Nissan, Audi, Hershey's or Victoria's Secret"). The Sixth Circuit has noted that "[i]t is difficult to establish fame under the Act sufficient to show trademark dilution" because plaintiffs need to show that their mark is a "household name." *Kibler v. Hall*, 843 F.3d 1068, 1083 (6th Cir. 2016) (quotation omitted). Both parties noted that, according to Professor McCarthy, the "minimum threshold survey response to prove 'fame' for dilution law should be in the range of 75%." *McCarthy* at § 24:104; ECF No. 79, PageID.2566; ECF No. 112, PageID.10070.

In support of its motion for summary judgment, Costa cited a survey by its expert, Hal Poret, that measured the fame of the Carhartt mark. The survey showed that only 21% of respondents had seen the Carhartt logo, in contrast to 98.7% of respondents who had seen the Nike mark. ECF No. 71-6, PageID.2156. In addition, only 8% could name Carhartt as the owner of the Carhartt mark. *Id.* at PageID.2157. Based on this evidence, a factfinder could conclude Carhartt is not famous.

In opposition, Carhartt cited various non-survey pieces of evidence that go toward the first and second fame considerations—the scale of the advertising and publicity of the mark as well as the scale of goods sold under the mark. Carhartt noted that, between 2011 to 2023, it achieved over $1 billion in sales for just fourteen apparel products in North America. ECF No. 91-47, PageID.8197. Carhartt sold over eighty million units of just those fourteen products. *Id.* Approximately 89 million people in the United States have worn Carhartt. ECF No. 112-17, PageID.10377. Carhartt products have also featured prominently in some Netflix series and have

been worn by various celebrities. ECF No. 112-15, PageID.10344–10345; ECF No. 112-16, PageID.10360–10371. As for the third fame consideration—actual recognition of the mark—Carhartt cited surveys indicting brand awareness of 76%. ECF No. 112-17, PageID.10378.

Although the Court doubts how probative *brand* awareness is on recognition of the Carhartt *mark*, Carhartt nevertheless presented sufficiently strong evidence on the first and second fame considerations to survive summary judgment. *See Maker's Mark Distillery, PBC v. Spalding Grp., Inc.*, No. 3:19-cv-00014, 2024 WL 947538, at *13 (W.D. Ky. Mar. 5, 2024) (noting that "[a] plaintiff need not submit a survey to prove that its mark is famous, and the factfinder must determine whether to accept Defendants' survey"). Taking all reasonable inferences in the light most favorable to Carhartt, a reasonable person could conclude it is "famous."

Depending on which evidence is considered, the factfinder could find for either party on the issue of fame. So, a material fact dispute exists that precludes summary judgment. Indeed, fame is a question of fact that is not always appropriate for resolution at summary judgment. *Id.* (denying summary judgment on trademark dilution notwithstanding a 2010 case finding, after a bench trial, that the Maker's Mark red wax seal was not famous). And so, the Court will deny summary judgment on the trademark dilution claim.

## IV.   Acquiescence Defense

Both Carhartt and Costa moved for summary judgment on Costa's acquiescence defense. The party asserting an acquiescence defense must prove the

elements of laches and show, "by words or conduct, that the trademark holder actively consented to use of the mark." *Bar's Prods. Inc. v. Bars Prods. Int'l Inc.*, 662 F. App'x 400, 413 (6th Cir. 2016) (cleaned up). Acquiescence can be express or implied. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). Unlike laches, which under current Sixth Circuit precedent "cannot be a defense to claims of injunctive relief in trademark cases," *McKeon Prods., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 741 n.2 (6th Cir. 2021), acquiescence bars both monetary relief and injunctive relief.

As the Court previously explained, serious factual disputes remain concerning Costa's laches defense that would be relevant to the acquiescence defense. Accordingly, the Court will deny summary judgment on Costa's motion regarding the acquiescence defense.

Furthermore, turning to the substance of the defense, genuine issues of material fact concerning the scope of Carhartt's alleged active consent to the use of Costa's mark also preclude summary judgment for either Costa or Carhartt on their cross-motions for summary judgment on acquiescence.

According to Costa, Carhartt did not just passively allow Costa to promote hats and shirts with the Costa logo—Carhartt actively encouraged that promotion. ECF No. 79, PageID.2563–2564. Meanwhile, Costa argued that "Carhartt partnered with Costa and paid for joint marketing of the products side-by-side, including products now alleged to be infringing." *Id.* at PageID.2564. There are three primary partnerships.

First, starting in 2013, Carhartt sponsored Costa's GEOBASS film series, which was an "adventure fishing YouTube series by Costa films." ECF No. 79, PageID.2551. Carhartt saw the film series as a "potential partnership with [Costa's] very successful initiative to target [the] southeast college campuses." ECF No. 79-12, PageID.2879. The series showed people wearing clothes with the Carhartt logo as well as the Costa logo. *Id.* at PageID.2881. In 2015, Carhartt paid $15,000 to Costa to support the series. ECF No. 79-12, PageID.2886.

That said, the film series appeared on Costa's YouTube channel, which to this day, is named "Costa Sunglasses." ECF No. 112-10, PageID.10297. Carhartt also noted that, in 2014 alone, it spent a total of $36,579,7167 on marketing, which dwarfs the $15,000 number. ECF No. 91-10, PageID.5992. Moreover, the joint marketing campaign did not feature several of the alleged infringing products.

Second, from 2014–2016, Carhartt sponsored tournaments by Bassmaster, which is "an organization focused on bass fishing and media." ECF No. 79, PageID.2554. During the events, Carhartt even used a Carhartt branded truck and boat that also had the Costa mark. ECF No. 80-24, PageID.3639; ECF No. 80-8, PageID.3468. At least one Carhartt employee at Bassmaster was aware that Costa was displaying apparel and hats featuring the wave logo. ECF No. 91-11, PageID.6063.

Third, from 2014–2017, Carhartt partnered with Costa at the ICAST fishing show, which is "the biggest tradeshow in the fishing industry." ECF No. 79, PageID.2555; ECF No. 79-12, PageID.2882; ECF No. 79-14, PageID.2922. Both

Carhartt and Costa had booths at ICAST. At the Costa booth, visited by at least one Carhartt employee, Costa prominently displayed apparel with the Costa mark. ECF No. 79-14, PageID.2923–2924. At ICAST, Costa threw a party for industry professionals that Carhartt paid $5,000, and later $10,000, to co-sponsor. ECF No. 79-14, PageID.2926, 2929. At the party, Costa gave out hats, shirts, and keepers with the Costa mark. *Id.* at PageID.2925. Carhartt VPs and booth staff got VIP status to attend the party. *Id.* at PageID.2926.

Based on the joint marketing campaigns, a reasonable factfinder could find that Carhartt acquiesced to Costa's use of the mark. But Carhartt also presented facts that undermine that conclusion, such as the small fraction of its budget that went towards these campaigns and the fact that the campaigns occurred in the limited context of fishing. Summary judgment is therefore inappropriate to either party on the issue.[7]

## CONCLUSION

For the reasons above, the Court will deny the motions. Genuine issues of material fact on the likelihood of confusion factors preclude summary judgment on Carhartt's motion for summary judgment on its trademark infringement, unfair competition and false designation of origin, and common law trademark infringement and common law unfair competition claims. The same genuine disputes of material

---

[7] In denying summary judgment, however, the Court notes that—whether or not the marketing campaigns are enough for acquiescence—they would certainly be relevant to the laches analysis. At a minimum, the campaigns would likely show that Carhartt knew or should have known about the alleged infringing apparel at the time of the partnerships.

fact preclude summary judgment on Costa's motion for summary judgment on laches. Genuine disputes of material fact regarding the fame of Carhartt also preclude summary judgment on the trademark dilution claim. Finally, genuine disputes of material fact regarding the scope of Carhartt's alleged acquiescence preclude summary judgment on the acquiescence defense.

**WHEREFORE**, it is hereby **ORDERED** that Carhartt's motion for summary judgment [90] is **DENIED**.

**IT IS FURTHER ORDERED** that Costa's motion for summary judgment [79] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 7, 2025

28