# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**CARHARTT, INC.,**

    Plaintiff,

**v.**

**COSTA DEL MAR, INC.,**

    Defendant.

Case No. 2:21-cv-11844-SJM-CI

Hon. Stephen J. Murphy, III
Mag. Judge Curtis Ivy, Jr.

## PLAINTIFF CARHARTT, INC.'S
## MOTION FOR SPOLIATION SANCTIONS

Plaintiff Carhartt, Inc. ("Carhartt"), by its counsel, Dickinson Wright PLLC, respectfully moves this Court for spoliation sanctions against Costa Del Mar, Inc. ("Costa"), including, but not limited to, an adverse inference at trial that the evidence of actual confusion favors Carhartt, or, in the alternative, precluding Costa from arguing evidence of actual confusion does not exist. Costa failed to preserve relevant evidence belonging to at least two of its employees, Mr. Owens and Ms. Hays, after having notice of potential litigation, which give rise to spoliation sanctions pursuant to *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540 (6th Cir. 2010) and Fed. R. Civ. P. 37(e).

WHEREFORE, for the reasons stated more fully in the accompanying Brief in Support, Carhartt respectfully requests this Court grant its motion and award the following sanctions:

A.     Consider that the evidence Costa Del Mar, Inc. ("Costa") spoliated would support a finding of actual confusion in favor of Carhartt; and

B.     Preclude Costa from eliciting evidence or arguing at trial that there is no evidence of actual confusion.

Date:   May 13, 2025                          Respectfully submitted,

                                              **DICKINSON WRIGHT PLLC**

                              By:   */s/ J. Benjamin Dolan*
                                    J. Benjamin Dolan (P47839)
                                    John S. Artz (P48578)
                                    John L. Krieger (Admitted *pro hac vice*)
                                    Amanda V. Letney (P87223)
                                    2600 W Big Beaver Road, Suite 300
                                    Troy, Michigan 48084
                                    JDolan@dickinsonwright.com
                                    JArtz@dickinsonwright.com
                                    JKrieger@dickinsonwright.com
                                    AVaughanLetney@dickinsonwright.com
                                    *Attorneys for Plaintiff Carhartt, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**CARHARTT, INC.,**

          Plaintiff,

**v.**

**COSTA DEL MAR, INC.,**

          Defendant.

Case No. 2:21-cv-11844-SJM-CI

Hon. Stephen J. Murphy, III
Mag. Judge Curtis Ivy, Jr.

## BRIEF IN SUPPORT OF PLAINTIFF CARHARTT, INC.'S
## <u>MOTION FOR SPOLIATION SANCTIONS</u>

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES.................................................................................i

STATEMENT OF ISSUES PRESENTED.............................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................... v

1.    INTRODUCTION .......................................................................1

2.    STATEMENT OF FACTS............................................................1

    A.    Costa Anticipated Trademark Litigation with Carhartt Before January 2019 .........................................................1

    B.    Travis Owens Is a Critical Witness ...........................................2

    C.    Melinda Hays is a Critical Witness ............................................4

    D.    Costa Failed to Preserve their Email Accounts and to Timely Issue a Litigation Hold........................................................6

    E.    Costa Refused Discovery on Spoliation Issues .........................8

3.    LEGAL ARGUMENT .................................................................9

    A.    Carhartt Is Entitled To Spoliation Sanctions Including An Adverse Inference Against Costa Under Fed. R. Civ. P. 37(e)..................9

        i.    Costa Had a Duty to Preserve Evidence at the Time it Was Destroyed........................................................10

        ii.    Costa Destroyed Mr. Owens' and Ms. Hays' Email Accounts with a Culpable State of Mind.........................14

        iii.    The Evidence Destroyed Is Relevant to Carhartt's Claims ...............................................................19

        iv.    The Appropriate Sanction for Costa's Actions Is a Negative Inference at Trial Under Fed. R. Civ. P. 37(e)(2)

or, in the Alternative, Sanctions Necessary to Cure the
Prejudice ..........................................................................21

4.   CONCLUSION...............................................................................24

# INDEX OF AUTHORITIES

## Cases

*Adkins v. Wolever*, 692 F.3d 499 (6th Cir. 2012) ..................................................9,14

*BancorpSouth Bank v. Herter*, 643 F.Supp.2d 1041 (W.D.Tenn., 2009)...............22

*Beaven v. U.S. Dep't of Just.*, 622 F.3d 540 (6th Cir. 2010) ............................ 10, 14

*Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750 (M.D. Tenn. 2021) ..........23

*Bruin v. Swank*, 2025 WL 289679 (W.D.Ky. 2025).......................................... 11, 15

*Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712 (N.D. Ohio 2024) ..............11

*Byrd v. Alpha All. Ins. Corp.*, 518 Fed. Appx. 380 (6th Cir. 2013)........................10

*Chan v. Triple 8 Palace, Inc.*, No. 03CIV6048(GEL)(JCF), 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005) ..........................................................................................15

*Clark Const. Group, Inc. v. City of Memphis*, 229 F.R.D. 131 (W.D. Tenn. 2005)12

Craig v. Stagner, 159 Tenn. 511, 19 S.W.2d 234 (Tenn. 1929) ..............................15

*Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768 (E.D. Mich. 2019)..........15

*Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2008 WL 1902499 (S.D. Ohio Apr. 28, 2008) ..........................................................................................................11

*Forest Labs., Inc. v. Caraco Pharm. Labs*., Ltd., 2009 WL 998402 (E.D. Mich. Apr. 14, 2009) ....................................................................................................... 9, 18

*In re Global Technovations*, 431 B.R. 739 (Bkrtcy.E.D.Mich., 2010) ...................11

*In re Natl. Cent. Fin. Enterprises, Inc. Fin. Inv. Litig.*, No. 2:03-MD-1565, 2009 WL 2169174 (S.D. Ohio July 16, 2009) .........................................................................12

*Kounelis v. Sherrer*, 529 F.Supp.2d 503 (D.N.J., 2008)........................................22

Livingston v. High Country Adventures, Inc., 156 F.3d 1230 (6th Cir. July 30, 1998) ............................................................................................................15

*Loyer v. Wayne Cnty.*, No. 21-12589, 2024 WL 4956628 (E.D. Mich. Dec. 3, 2024) ...................................................................................................... 10, 14

*McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn. 1992)................................................15

*Prudential Def. Sols., Inc. v. Graham*, 2021 WL 4810498 (E.D. Mich. Oct. 15, 2021 ....................................................................................................................10

*Stedeford v. Wal-Mart Stores, Inc.*, 2:14-cv-01429-JAD-PAL, 2016 WL 3462132, 2016 U.S. Dist. LEXIS 83019 (D. Nev. June 24, 2016) ...................23

*Stocker v. United States*, 705 F.3d 225 (6th Cir. 2013) ...........................................19

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999) .......................9

*Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) .......................12

**Other Authorities**

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284.2 (3d 3d.) ............................23

**Rules**

Fed. R. Civ. P. 37(e)................................................................................... 10, 14, 22

Fed.R.Civ.P. 26(a)(1)(A) ........................................................................................12

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Should this Court find Costa was under a duty to preserve relevant evidence on or before January 2019?

**Carhartt's Answer: Yes.**

**Costa's Answer: No.**

**The Court Should Answer: Yes.**

2.      Should this Court find Costa destroyed evidence with a culpable state of mind?

**Carhartt's Answer: Yes.**

**Costa's Answer: No.**

**The Court Should Answer: Yes.**

3.      Should this Court find the destroyed evidence was relevant to Carhartt's claims?

**Carhartt's Answer: Yes.**

**Costa's Answer: No.**

**The Court Should Answer: Yes.**

4.      Should this Court find that spoliation sanctions are appropriate, including drawing an adverse inference at trial that the evidence of actual confusion favors Carhartt, or, in the alternative, preclude Costa from arguing evidence of actual confusion does not exist?

**Carhartt's Answer: Yes.**

**Costa's Answer: No.**

**The Court Should Answer: Yes.**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Federal Rule of Civil Procedure 37(e).

*Adkins v. Wolever*
        554 F.3d 650 (6th Cir.2009).

*Beaven v. U.S. Dep't of Just*.
        622 F.3d 540 (6th Cir. 2010).

*Byrd v. Alpha All. Ins. Corp.*
        518 Fed. Appx. 380 (6th Cir. 2013).

*Livingston v. High Country Adventures, Inc.*
        156 F.3d 1230 (6th Cir. July 30, 1998).

*Stocker v. United States*
        705 F.3d 225 (6th Cir. 2013)

## 1.   <u>INTRODUCTION</u>

Plaintiff Carhartt, Inc. ("Carhartt") moves this Court for sanctions, including, but not limited to, an adverse inference at trial that the evidence of actual confusion favors Carhartt, or, in the alternative, precluding Costa Del Mar, Inc. ("Costa") from eliciting evidence, or arguing, that there is no evidence of actual confusion due to its destruction and/or failure to preserve evidence. Specifically, Costa destroyed the emails, including attachments, of two high ranking former employees, Travis Owens and Melinda Hays. This Court should issue sanctions because Costa: (1) failed to preserve the email accounts belonging to Travis Owens (Costa's Senior Director of Sales) and Melinda Hays (Costa's Bass Fishing Community leader), even after Costa initiated legal proceedings against Carhartt alleging a likelihood of confusion between the competing "C" Logos at issue in this case.

Accordingly, Carhartt seeks an appropriate sanction from this Court.

## 2.   <u>STATEMENT OF FACTS</u>

### A.   **Costa Anticipated Trademark Litigation with Carhartt Before January 2019**

On January 11, 2018, Carhartt filed a Trademark Application seeking to register its logo for use with eyewear. Costa discovered Carhartt's attempt to register its mark on eyewear (**Exhibit A** Owens Depo. Tr. at 187:24 -188:1) and, on January 16, 2019, instituted a proceeding in the Trademark Trial and Appeal Board ("TTAB") opposing Carhartt's "C" Logo  Application for eyewear on the basis

it would cause consumers to be confused with products bearing Costa's "C"

Logo.  (**Exhibit B**, Costa Notice of Opposition.) Notably, Costa's Notice of Opposition admitted "a likelihood of confusion exists between [Carhartt's] "C" Mark … and [Costa's] "C" Mark used on [Costa's] goods." (**Exhibit B**, ¶12.)

Carhartt filed its answer and counterclaim in February 2019, denying that the use of its logo on protective eyewear would cause confusion with Costa's sunglasses. (**Exhibit C**, Carhartt Countercl., ¶2.) On January 15, 2020, Carhartt filed a Petition for Cancellation against Costa's Trademark Registration for Costa's "C" Logo on bags and backpacks, also alleging a likelihood of confusion. (**Exhibit D**, Carhartt Petition for Cancellation, ¶18-29.)  on August 9, 2021, Carhartt filed the instant Complaint against Costa asserting claims for trademark infringement, trademark dilution, and unfair competition. (**Exhibit E**, Compl.)[1] The TTAB stayed its proceedings pending the outcome of this litigation.

### B.    Travis Owens Is a Critical Witness

In its Initial Disclosures that Costa filed in the TTAB in September 2019, Costa identified two individuals with knowledge of discoverable information that bears directly on the *Frisch* likelihood of confusion factors, including Mr. Owens. (**Exhibit F**, Costa's TTAB Disclosures) In 2022, Costa again identified Mr. Owens

---

[1] Carhartt's later filed an Amended Complaint on October 7, 2024. ECF No. 59.

in its Initial Disclosures as just one of two individuals having discoverable information in this case.[2] (**Exhibit G**, Costa's Initial Disclosures.)

Mr. Owens worked for Costa beginning in 1998 and served as its Senior Director of Sales and later Vice President of Sales before leaving the company in April 2021. In his role, Mr. Owens generated comparative sales reports and high-to-low reports on a weekly, monthly quarterly, and yearly basis, showing missed opportunities, where Costa lost sales, growing product trends, and specific channels of trade. (**Exhibit A** at 49:15-52:18.) Mr. Owens was involved in deciding what logo to put on hats, shirts, and other apparel. (**Exhibit A** at 128:3-9, Q: [Y]ou weren't involved in meetings or decision-making of what logo to put on hats or shirts of any other clothing, for that matter. A: Yeah, I would have been consulted[.]) Notably, during Mr. Owens' tenure with Costa, Mr. Owens saw the company through the rebranding of its logo around 2009, the opposition proceeding against Carhartt, and at least two major transitions (Costa was acquired by Essilor in 2014 and went through a major merger with Luxottica in 2018). In connection with the Luxottica transition, Costa's apparel product offerings exploded such that Costa began to

---

[2] In Costa's TTAB Initial Disclosures, Costa only identified Mr. Owens and TJ McMeniman, Costa's Vice President of Marketing, as individuals with relevant information to support their allegation that Carhartt's C logo was likely to cause confusion with Costa's C logo. In Costa's Initial Disclosures for this case, Costa only identified Mr. Owens and Justin Cupps, Luxottica's Senior Vice President of Sales, as individuals with discoverable information.

squarely compete with Carhartt in the apparel space. Costa also utilized the C logo alone on this new apparel similar to how Carhartt uses its C logo on its apparel.

According to Costa, Mr. Owens possesses relevant knowledge and information regarding the following:

> (1) sales of goods under its pleaded registration; (2) channels of trade; (3) customers; (4) conditions its goods are purchased; (5) sales; (6) geographic territories; (7) historical marketing and advertising efforts; (8) marketing relationship with Carhartt and efforts to promote its mark; (9) historical information regarding the design and promotion of its mark; (10) logo and brand development; and (11) involvement in promotional efforts and sponsorships.

(**Exhibit H**, Costa's TTAB Supplemental Initial Disclosures, §(I)(A); **Exhibit I**, Costa's Preliminary Witness List, ¶2; **Exhibit J**, Costa's Responses to Carhartt's First Interrogatories, No. 1, 3, and 5.) Notwithstanding the foregoing, Costa attempted to downplay Mr. Owens' significance (**Exhibit K**, Costa Discovery Matrix at 9-10, "Travis Owens is not believed to be a key custodian for this matter.") Mr. Owens clearly is a key witness possessing information relevant to the dispute.

### C.    Melinda Hays is a Critical Witness

Ms. Hayes was employed by Costa in 2015 and served as its Bass Fishing Community Leader until her departure from the company in March 2019. Of the few limited communications produced by Costa involving Ms. Hays, all of which were obtained only through the email accounts of other Costa employees, it is evident Ms. Hays was involved in promotional and sponsorship activities, including assessing

and evaluating branding and marketing decisions in the bass fishing space. While a majority of Carhartt's and Costa's sales are to retailers who resell to consumers, Ms. Hays and Mr. Owens were the primary Costa representatives directly engaging with consumers when Costa initiated the TTAB proceedings.[3]

Ms. Hays was regularly exposed to Carhartt because, as Ms. Hays put it, Carhartt is "a big sponsor in bass fishing." (**Exhibit L,** Melinda Hays' December 22, 2016 Email, Costa0024165). In fact, it is only from one of these other email accounts that Carhartt learned Ms. Hays authored a particularly critical piece of evidence to John Tegner, Vice President of ecommerce. In this critical email, Ms. Hays addressed modifications to the Costa C logo on certain products it was introducing into various markets that "do not know the Costa C." (**Exhibit L**). Ms. Hays explained to Mr. Tegner that Carhartt is a big player in the bass fishing community and "sadly *some people* mistake our C logo for Carhartt." (**Exhibit L**). (emphasis added). However, no other emails addressing this revelation were produced, including probable responses. When cross-examined about the email chain, Ms. Hays could not recall the email chain or any circumstances surrounding it. (**Exhibit M**, Hays Depo. Tr., 90: 7-11).

---

[3] That any other Costa representatives who had similar direct consumer interaction during were either no longer employed by Costa or had their emails destroyed, highlights the criticality of this destroyed information.

### D.   Costa Failed to Preserve their Email Accounts and to Timely Issue a Litigation Hold

Costa claims it has a policy wherein it deletes employee email accounts after an employee leaves Costa. (**Exhibit N**, Costa Response to Carhartt's Rule 30(b)(6) Deposition Notice.) Yet, Costa refused to produce any documents on retention policies or its litigation hold. (**Exhibit O**, Costa's Responses to Carhartt's Fifth Requests for Production.) Once deleted, the email accounts are deemed permanently destroyed because Costa does not retain email licenses for its former employees. (**Exhibit P**, Costa's Responses to Carhartt's Third Interrogatories.)

In early January 2023, and in anticipation of producing large amounts of ESI, the parties negotiated and agreed to a protocol for, among other things, email ESI, which required the parties to negotiate in good faith regarding search parameters, such as custodians and search terms (**Exhibit Q**, ESI Order).

Yet, Costa responded to Carhartt's requests for production of documents in May 2023 and completely stonewalled the discovery process by failing to produce relevant emails. Thus, in August 2023, Carhartt requested that Costa disclose email custodians and search parameters to begin good faith negotiations agreed-to by the parties in the Agreed Discovery Protocol. Despite having expressly agreed to good faith negotiation for email ESI, Costa refused, and Carhartt brought this issue to the Court. The Court appointed a Discovery Master to resolve the dispute.

Following an initial call with the Discovery Master and subsequent meet and confers, Costa finally agreed to exchange ESI disclosures. However, Costa's disclosure failed to identify key witnesses as custodians and completely omitted mention of deleted emails accounts. This necessitated Carhartt to raise these deficiencies. (**Exhibit R**, Carhartt Letter Detailing Deficiencies).

In response, Costa refused to undertake meaningful additional email searches, placing disproportional limits on Costa's custodians and its search terms, and refusing to negotiate in good faith as to search parameters. As a result, on November 27, 2023, Carhartt requested additional intervention of the Discovery Master with respect to Costa's emails.

At this time, the Discovery Master required the parties to provide ESI charts to address custodian data, search terms, and potential spoliation issues. It was not until the production of the ESI charts on December 13, 2023 that Costa finally disclosed—after months of avoiding Carhartt's demands for custodian information—that it did not retain email accounts for Mr. Owens and Ms. Hays. (**Exhibit K**). In fact, Carhartt later learned that Costa did not implement a litigation hold until September 22, 2021, intentionally permitting the mailboxes of departing key witnesses to be destroyed. (**Exhibit N** at 8).

### E.      Costa Refused Discovery on Spoliation Issues

Costa prevented Carhartt from inquiring into the spoliated evidence. After learning of Costa's spoliation, Carhartt served additional written discovery seeking information about Costa's document retention policies, data collection, litigation holds, and other details contributing to the spoliation. Along with a laundry list of objections, Costa steadfastly refused to provide any documents or information relating to what Costa referred to as "discovery about discovery." (**Exhibit N** at 4-9; **Exhibit O** at 3-8). For example, although Costa finally revealed in the Discovery Matrix (**Exhibit K**) that Mr. Owens' and Ms. Hays' email accounts were not retained, Costa continued to deny in April 2024 discovery that it deleted their email accounts (**Exhibit S**, Costa's Responses to Carhartt's First Request for Admissions).

Carhartt also sought preliminary guidance from the Discovery Master, but the Discovery Master instructed that he would not be addressing issues of spoliation as those were better left to the Court. Thereafter, in response to the Rule 30(b)(6) deposition directed to Costa, Costa objected and refused to produce a deponent on the subjects relevant to spoliation and Costa's state of mind from the time Costa anticipated litigation through the filing of this federal court Complaint. (**Exhibit N**). For example, Costa objected and refused to produce witnesses to testify regarding Costa's (1) document retention policy, for which Costa erroneously stated it retains email licenses (*Id*. at 6); (2) litigation holds and timing of litigation holds (*Id*. at 7-

8); and (3) policy of deleting emails after an employee leaves Costa, specifically for Mr. Owens and Ms. Hays. (*Id*. at 8).

### 3.     <u>LEGAL ARGUMENT</u>

**A.     Carhartt Is Entitled To Spoliation Sanctions Including An Adverse Inference Against Costa Under Fed. R. Civ. P. 37(e)**

Carhartt cannot look to anywhere else to obtain Mr. Owens' and Ms. Hays' email accounts as a result of Costa's policy to delete emails. As a result, Carhartt seeks spoliation sanctions, including an adverse inference to be drawn at trial against Costa for its failure to preserve relevant evidence in anticipation of litigation.

Spoliation occurs when there is "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Forest Labs., Inc. v. Caraco Pharm. Labs*., Ltd., 2009 WL 998402, at *1 (E.D. Mich. Apr. 14, 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Spoliation sanctions are remedial, intended to level the evidentiary playing field and sanction conduct that is improper. *Adkins v. Wolever*, 554 F.3d 650, 652-653 (6th Cir.2009)(en banc.)

A grant of spoliation sanctions is appropriate when the moving party shows: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Loyer*

*v. Wayne Cnty.*, No. 21-12589, 2024 WL 4956628, at *1 (E.D. Mich. Dec. 3, 2024) relying on *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010). Issuing spoliation sanctions is a two-step process. First, courts determine whether the spoliating party's conduct gives rise to sanctions. Next, the court determines the appropriate sanctions under Fed. R. Civ. P. 37(e). To obtain an adverse inference, courts look to the intent of the spoliating party. Fed. R. Civ. P. 37(e)(2). *Prudential Def. Sols., Inc. v. Graham*, 2021 WL 4810498, at *5 (E.D. Mich. Oct. 15, 2021).

### i.   Costa Had a Duty to Preserve Evidence at the Time it Was Destroyed

There is no question Costa had a duty to preserve relevant evidence once it contemplated pursuing litigation regarding the logos at issue against Carhartt. Whether litigation is foreseeable it is measured by an objective inquiry, not a subjective one. *Byrd v. Alpha All. Ins. Corp.*, 518 Fed. Appx. 380, 384 (6th Cir. 2013) (unpublished). In other words, courts look to when a party knew or reasonably should have known that the evidence *might be relevant* to future litigation. *Beaven*, 622 F.3d at 553.

A party's duty to preserve may be triggered before the filing of a complaint, such as when the party has made "a decision to pursue a claim." *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 818 (N.D. Ohio 2024). Moreover, a party has an independent duty to preserve evidence if it is aware, or reasonably should be aware,

of pending litigation. *Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2008 WL 1902499, at *3 (S.D. Ohio Apr. 28, 2008).

Once the duty to preserve relevant evidence is triggered, a party is required to suspend all routine document destruction policies and put a litigation hold in place to ensure relevant documents are preserved. *In re Global Technovations*, 431 B.R. 739, 780 (Bkrtcy.E.D.Mich., 2010). *See also Bruin v. Swank*, 2025 WL 289679 (W.D.Ky. 2025) (finding spoliation sanctions were appropriate and a party had a duty to preserve evidence when defendant disposed of relevant video footage while a grievance investigation was ongoing, but before a formal complaint was filed). This duty to institute a litigation hold is unequivocal.

At the very least, Costa was obligated to preserve evidence once it began contemplating and preparing to institute the TTAB proceeding against Carhartt in January 2019 relating to the trademarks at issue. (**Exhibit B**.) By barring discovery on the issue of "state of mind" prior to January 2019, Costa failed to offer an explanation to rebut the clear inferences of bad faith. (**Exhibits J, N, O, & P**.) However, once Costa initiated the TTAB proceeding in 2019, the fundamental principle of preservation – requiring a party to suspend routine document retention policies and establish a litigation hold – was objectively mandatory. Moreover, the counterclaim filed against Costa by Carhartt in 2019, as well as the second TTAB proceeding instituted by Carhartt against Costa in 2020, objectively further triggered

the duty to preserve. Yet, Costa failed to institute any kind of litigation hold until September 2021. (**Exhibit N** at 8).

Objectively, Costa's involvement in the TTAB proceeding inherently suggested it should retain documents, communications, and any other evidence relevant to the claims being made. The types of documents and communications Costa was under a duty to preserve included all "unique, relevant evidence that might be useful to the adversary." *Clark Const. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005) *quoting Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217-218 (S.D.N.Y. 2003).

The scope of this duty extends to all individuals "'likely to have discoverable information that the disclosing party may use to support its claims of defenses.' Fed.R.Civ.P. 26(a)(1)(A)." *Clark Const. Group, Inc*. at 136. Thus, Costa had a duty to preserve evidence of key players in the litigation, i.e. all employees likely to have relevant evidence. *In re Natl. Cent. Fin. Enterprises, Inc. Fin. Inv. Litig.*, No. 2:03-MD-1565, 2009 WL 2169174, at *11 (S.D. Ohio July 16, 2009). Here, Mr. Owens and Ms. Hays are key players from whom evidence needed to be preserved.

As explained above, Costa repeatedly identified Mr. Owens as a "key player" with relevant knowledge of the trademark issues between Costa and Carhartt. (**Exhibits F**, **G**, **H**, & **I**.) Costa therefore had an obligation to ensure Mr. Owens' email account was preserved from January 2019 forward. In fact, Mr. Owens agreed

that even if there was not a specific document retention policy in place at the time, that Costa should have had a backup of his documentation. (**Exhibit A** at 189: 3-7.) There is no question that once Mr. Owens' employment with Costa ceased in April 2021, ***over two years after Costa initiated the TTAB proceedings and while proceedings were ongoing***, his email account should have been marked for preservation. Instead, Costa deleted his email account in April 2021. (**Exhibit K**.)

Melinda Hays is also a "key player," particularly given her role at Costa. As explained above, Ms. Hays was heavily involved in Costa's marketing, including direct to consumer relations and sponsorship and promotional activities and thus, was tasked with Costa's branding decisions and marketing efforts. (**Exhibit M** at 43: 6-13; 35-43.) More importantly, Ms. Hays is a 'key player' because she had direct knowledge of actual confusion, as evidenced by her critical email in 2016 acknowledging marketplace confusion. Ms. Hays had relevant knowledge of the existence of confusion in the marketplace at the time Costa instituted the first TTAB proceeding in 2019, which alleged likelihood of confusion against Carhartt. She unquestionably had information relevant to the trademark disputes involving the Carhartt and Costa C Logos. Costa should have preserved Ms. Hays' email account as well, but deleted it in March 2019 (**Exhibit K**.)

Therefore, Costa had a duty to take the requisite steps to preserve both Mr. Owens' and Ms. Hays' email accounts.  Notwithstanding the fact that Costa knew

they were "key players" with knowledge relevant to the disputes involving the Carhartt and Costa C logos, Costa deleted their email accounts.

### ii. Costa Destroyed Mr. Owens' and Ms. Hays' Email Accounts with a Culpable State of Mind.

Costa undisputedly and permanently destroyed Mr. Owens' and Ms. Hays' email accounts with a culpable state of mind. Spoliation sanctions are warranted when the evidence was destroyed or lost with a culpable state of mind. As the Eastern District of Michigan explained, to make a showing of intent to deprive under Fed. R. Civ. P. 37(e)(2), the moving party must show "the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Loyer*, No. 21-12589, 2024 WL 4956628, at *3, quoting *Adkins v. Wolever*, 692 F.3d 499, 504-05 (6th Cir. 2012) (quoting *Beaven*, 622 F.3d at 554); *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013) ("[E]ven negligent conduct may suffice to warrant spoliation sanctions under the appropriate circumstances.") (citation omitted). Stated differently, the party seeking spoliation sanctions need not demonstrate that the spoliating party destroyed the evidence with an intent to breach a duty to preserve it. *Adkins*, 692 F.3d at 504.

Even when courts find the spoliating party did not destroy documents knowingly, the court may sanction parties based on gross negligence. In the spoliation context, gross negligence means a "conscious indifference to the consequences." *Livingston v. High Country Adventures, Inc.*, 156 F.3d 1230, *3 (6th

14

Cir. July 30, 1998) (quoting *Craig v. Stagner*, 159 Tenn. 511, 19 S.W.2d 234, 236 (Tenn. 1929)) (*abrogated on other grounds by McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992)) A spoliating party may be grossly negligent in instances where they utterly failed to implement any form of litigation at the outset of litigation. *Chan v. Triple 8 Palace, Inc.*, No. 03CIV6048(GEL)(JCF), 2005 WL 1925579, at *1 (S.D.N.Y. Aug. 11, 2005) (finding that gross negligence exists when documents are systematically destroyed because they were never informed of their duty to suspend routine document destruction policies.) In making this determination, courts consider the extent to which a party was on notice that litigation was likely and that information would be relevant. *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 772-773 (E.D. Mich. 2019).

Here, the timeline of events speaks for itself. Costa knew it was not only actively engaged in trademark litigation, but initiated it in 2019, which established a duty for Costa to preserve evidence relevant to ongoing trademark litigation and other related reasonably foreseeable litigation. *See Bruin v. Swank*, 2025 WL 289679 (W.D.Ky., 2025) (finding the culpable state of mind standard is clearly met when defendant evidence was destroyed under a policy.) Yet, Costa took no action to preserve evidence from January 2019 to September 2021, when it finally implemented a litigation hold, over two years after Costa instituted TTAB proceedings against Carhartt. (**Exhibit N** at 8.)

Costa acted knowingly and/or with gross negligence when it destroyed Mr. Owens' email account in April 2021. Costa had already singled out and identified Mr. Owens as a critical witness in each of the trademark proceedings since 2019, including this case. (**Exhibits F, G**, **H**, & **I**.) Costa had an unequivocal obligation to preserve Mr. Owens' email account. Its decision to destroy his email account after notifying Carhartt in several legal proceedings that Mr. Owens would be the source of information about several significant issues in the trademark dispute is nothing short of knowingly and intentional.

After numerous affirmative statements about Mr. Owens being a key witness in both the TTAB action and this litigation (see **Exhibits F, G**, **H**, & **I**), Costa attempted to mislead the Discovery Master and diminish the significance of its spoliation by asserting, for the first time and in bad faith, that Mr. Owens was not, in fact, a key witness. (**Exhibit K** at 9-10, "Travis Owens is not believed to be a key custodian for this matter.") Not only was this assertion directly contrary to repeated disclosures and admissions by Costa, but is demonstrably false.

Similarly, Costa acted knowingly and/or with gross negligence when it destroyed Ms. Hays' email account in March 2019. (**Exhibit K**.) As of January 2019, Costa was aware it had filed a legal proceeding against Carhartt alleging likelihood of confusion between the Carhartt C Logo and the Costa C Logo. Ms. Hays, when discussing how "some people" mistake Costa's "C" for Carhartt's, even

recommended Costa use its full name and not just the Costa "C" (**Exhibit L**). It is not credible that there was not a single follow up email on this important issue, particularly within the sales and marketing departments of which Ms. Hays and Mr. Owens played a prominent role. More importantly, the revelation that there was actual confusion in the marketplace was clearly unfavorable to Costa and was relevant in proving a critical *Frisch* factor: actual marketplace confusion. Costa knowingly destroyed evidence documenting actual marketplace confusion.

Additionally, Costa actively hid the destruction of Mr. Owens' and Ms. Hays' email accounts and attempted to thwart every effort by Carhartt to learn of the spoliation. While the parties were exchanging document productions, Costa completely halted the discovery process by not producing emails. Costa refused to disclose its ESI email custodians and failed to take any meaningful email searches. After forcing Carhartt to seek the Court's intervention, the parties were ordered to utilize a Discovery Master to resolve the discovery disputes. After Carhartt spent significant time negotiating the email disclosures with the Discovery Master, which were met with repeated stone-walling, Costa finally agreed to produce ESI disclosures in December 2023. Only through these mandated ESI disclosures, Costa disclosed, ***for the first time***, that it did not retain Mr. Owens' and Ms. Hays' email account. (**Exhibit K**.) Costa did not ***disclose*** the destruction of their email accounts

for more than six (6) years after Ms. Hays left the company and nearly four (4) years after Mr. Owens left the company.

The fact that Costa further blocked Carhartt's attempts to inquire into spoliation issues is evidence of intent to hide its intent and motives. Costa refused to respond to any discovery on spoliation issues and even continued to deny it deleted Mr. Owens' and Ms. Hays' email accounts as of April 2024. In Carhartt's Rule 30(b)(6) deposition notice, Carhartt requested Costa produce a deponent to testify as to the spoliation issues. However, Costa objected and maintained its objections by refusing to produce a witness to testify on the subject relevant to spoliation. (**Exhibit N**).

Notwithstanding the above, Costa's conduct was, at a minimum, negligent. When courts find a party destroyed documents when it was under a duty to preserve evidence any destruction of evidence thereafter is, at a minimum, negligent. *Forest Labs.*, 2009 WL 998402, at *5 (quoting *Zubulake*, 220 F.R.D. at 220). There is no doubt Mr. Owens' and Ms. Hays' email accounts were destroyed despite Costa's actual knowledge of their relevance. Costa contemplated filing its TTAB proceeding against Carhartt before January 2019, and Costa proceeded to destroy Ms. Hays' email account in March 2019 and Mr. Owens' email account in April 2021. Although the federal court Complaint was not officially filed at this time, the TTAB proceeding, that Costa initiated, was still ongoing – as well as the one initiated by

Carhartt. Therefore, this Court should find Costa knowingly and/or with gross negligence destroyed Mr. Owens' and Ms. Hays' email accounts or, in the alternative, was negligent in destroying their email accounts.

### iii.   The Evidence Destroyed Is Relevant to Carhartt's Claims

It is without question that Mr. Owens' and Ms. Hays' email accounts are highly relevant to Carhartt's claims. Costa intended to rely on Mr. Owens as a key witness, who held a senior director role and was exposed to Costa's logo branding and development, among other things. Additionally, Ms. Hays' email account was also relevant to Carhartt's claims because she managed Costa's marketing and social media and she had knowledge of actual confusion in the marketplace, which is rare evidence to come by in a trademark infringement matter.

To establish relevance, the party seeking spoliation sanctions must make "some showing indicating the destroyed evidence would have been relevant to a contested issue ... such that a reasonable trier of fact could find that it would support that claim." *Beaven*, 622 F.3d at 555. Carhartt may rely on circumstantial evidence to establish such relevance. *Id*.

Mr. Owens' email account is relevant because he was identified by Costa as the primary person having discoverable information on a number of topics related to the *Frisch* likelihood of confusion factors. (**Exhibits F**, **G**, **H** & **I**.) Specifically, Costa admitted Owens had discoverable information regarding Costa's (1) sales of

goods under its pleaded registration; (2) channels of trade; (3) customers; (4) conditions its goods are purchased; (5) sales; (6) geographic territories; (7) historical marketing and advertising efforts; (8) marketing relationship with Carhartt and efforts to promote its mark; (9) historical information regarding the design and promotion of its mark; (10) logo and brand development; and (11) involvement in promotional efforts and sponsorships. (**Exhibit F**, §(I)(A); **Exhibit G**, ¶2; **Exhibit H**, No. 1, 3, & 5.) Moreover, Mr. Owens even stated he would have been consulted on what logo to put on hats, shirts, and other apparel. (**Exhibit A** at 128:3-9).

There is simply no reason not to believe that Mr. Owens' email contained information regarding any of these subject matters. Each of these areas directly relates to whether a likelihood of confusion exists in the marketplace, of which Costa admits (**Exhibit B**, ¶12, "there is a likelihood of confusion between [Carhartt's] 'C' mark for 'eyewear' … and [Costa's] 'C' Mark.") The fact that Costa intended to rely on him as a key witness at the TTAB proceeding and this federal court proceeding, speaks volumes to the relevance of information he holds.

Based on the few items actually preserved by Costa, Ms. Hays unquestionably had information relevant to the *Frisch* factors, including, but not limited to, evidence of actual confusion. Particularly, Ms. Hays' 2016 email directed to Mr. Tegner acknowledged the new markets Costa was entering led consumers to mistake Costa's C logo for Carhartt's C logo. (**Exhibit L**.)  This email is evidence Ms. Hays knew

there was actual confusion in the marketplace, which is critical evidence in a trademark infringement case. (**Exhibit M** at 90:7-11, 93:8-10.)

Finally, Ms. Hays' email account is highly relevant due to her marketing responsibilities as a Group Director of Fishing Communities. Explained above, Ms. Hays' role was to make recommendations to sponsorship and promotional activities, make decisions regarding Costa's branding and marketing, work with and create contracts with professionals in the fishing community, and manage Costa's social media account. (**Exhibit M** at 35-43.) Certainly, Ms. Hays' heavy involvement in Costa's branding decisions, including how Costa's mark is presented in the marketplace, underscores the importance of her email account.

Therefore, given Costa's heavy reliance on Mr. Owens to supports its claims and his senior role in the company, as well as Ms. Hays' Costa branding role and her email acknowledging actual marketplace confusion, there is no question that Mr. Owens' and Ms. Hays' email accounts are highly relevant to Carhartt's trademark claims against Costa.

### iv. The Appropriate Sanction for Costa's Actions Is a Negative Inference at Trial Under Fed. R. Civ. P. 37(e)(2) or, in the Alternative, Sanctions Necessary to Cure the Prejudice

The circumstances surrounding the destruction of Mr. Owens' and Ms. Hays' emails accounts are nearly identical. Costa knowingly destroyed Mr. Owens' and Ms. Hays' email account despite actual knowledge of their relevance. Thus, under

Fed. R. Civ. P. 37(e)(2), Carhartt requests the Court sanction Costa for its conduct and enter an order drawing a negative inference that the accounts contained information that would have been unfavorable to Costa and supported Carhartt's likelihood of confusion allegations. In the alternative, if the Court does not find Costa intentionally or knowingly destroyed evidence, Carhartt requests this Court issue sanctions necessary to cure prejudice to Carhartt.

When an adverse inference is appropriate, courts may "infer that destroyed evidence might or would have been unfavorable to the position of the offending party." *BancorpSouth Bank v. Herter*, 643 F.Supp.2d 1041, 1060 (W.D.Tenn., 2009) *quoting Kounelis v. Sherrer*, 529 F.Supp.2d 503, 518 (D.N.J., 2008). This permissive inference is based on the fact that parties destroy relevant evidence "out of fear" that the evidence is unfavorable to them. *Id*.

As a result, the Court should determine spoliation sanctions are appropriate, including drawing an adverse inference that evidence of actual confusion in the marketplace favors Carhartt.

In the alternative, a court may issue spoliation sanctions even when a court finds the spoliating party did not act with intent. Courts retain "broad discretion in crafting a proper sanction for spoliation." *Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750, 755 (M.D. Tenn. 2021) *quoting Adkins*, 554 F.3d at 652. In fact, among "the measures that may be considered are 'forbidding the party that failed to

preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument.'" *Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750, 755 (M.D. Tenn. 2021) *quoting* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284.2 (3d 3d.); *see also Stedeford v. Wal-Mart Stores, Inc.*, 2:14-cv-01429-JAD-PAL, 2016 WL 3462132, at *7, 2016 U.S. Dist. LEXIS 83019, at *44–46 (D. Nev. June 24, 2016).

Thus, even if this Court does not find Costa knowingly deprived Carhartt of key evidence, the Court may still turn to other available sanctions against Costa. Notably, because Costa could not produce their email accounts to Carhartt for inspection, Carhartt was unable to effectively cross-examine Mr. Owens or Ms. Hays.

Thus, the Court may in its discretion limit Costa's ability to argue evidence of actual confusion in the marketplace does not exist.

There is no question Mr. Owens and Ms. Hays have unique knowledge relating directly to the issues of this case. Costa's inability to provide the email accounts from Mr. Owens and Ms. Hays significantly hindered Carhartt's ability to effectively prosecute its claims and obtain relevant discovery. Costa was under a duty to preserve relevant evidence it was in control of, which Costa destroyed knowingly, and which was clearly relevant to Carhartt's claims in this matter.

Accordingly, Carhartt is entitled to spoliation sanctions against Costa of an adverse inference as to Mr. Owens' and Ms. Hays' email correspondence or in the alternative, necessary spoliation sanctions to cure the prejudice to Carhartt.

## 4.   **CONCLUSION**

For the foregoing reasons, Plaintiff Carhartt, Inc., respectfully requests the Court grant its motion for spoliation sanctions against Costa Del Mar, Inc.

Date:   May 13, 2025                      Respectfully submitted,

**DICKINSON WRIGHT PLLC**

By:   */s/ J. Benjamin Dolan*
      J. Benjamin Dolan (P47839)
      John S. Artz (P48578)
      John L. Krieger (Admitted *pro hac vice*)
      Amanda V. Letney (P87223)
      2600 W Big Beaver Road, Suite 300
      Troy, Michigan 48084
      JDolan@dickinsonwright.com
      JArtz@dickinsonwright.com
      JKrieger@dickinsonwright.com
      AVaughanLetney@dickinsonwright.com
      *Attorneys for Plaintiff Carhartt, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I will cause a true and correct copy of the foregoing document to be served via CM/ECF on May 13, 2025, on all counsel or parties of record:

Marc Lorelli (P63156)
Chanille Carswell (P53754)
Rebecca J. Cantor (P76826)
Chelsea E. Pasquali (P77375)
Reza Roghani Esfahani (P83787)
BROOKS KUSHMAN P.C.
150 W. Second St., Ste. 400N
Royal Oak, Michigan 48067-3846
Tel: (248) 358-4400 / Fax: (248) 358-3351
Email:       mlorelli@brookskushman.com
             ccarswell@brookskushman.com
             rcantor@brookskushman.com
             cpasquali@brookskushman.com
             resfahani@brookskushman.com
             LXTL0101L@brookskushman.com

Attorneys for Defendant Costa Del Mar, Inc.

*/s/ J. Benjamin Dolan*
J. Benjamin Dolan

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**CARHARTT, INC.,**

Plaintiff,

**v.**

**COSTA DEL MAR, INC.,**

Defendant.

Case No. 2:21-cv-11844-SJM-CI

Hon. Stephen J. Murphy, III
Mag. Judge Curtis Ivy, Jr.

## <u>INDEX OF EXHIBITS</u>

Exhibit A: Deposition of Travis Owens.

Exhibit B: January 16, 2019 Costa Notice of Opposition.

Exhibit C: September 18, 2019 Carhartt Counterclaim.

Exhibit D: January 15, 2020 Carhartt Petition for Cancellation.

Exhibit E: August 9, 2021 Carhartt Complaint Against Costa.

Exhibit F: Costa's TTAB Initial Disclosures.

Exhibit G: Costa's Federal Court Initial Disclosures.

Exhibit H: Costa's Supplemental TTAB Initial Disclosures.

Exhibit I: Costa's Preliminary Witness List.

Exhibit J: Costa's Responses to First Interrogatories.

Exhibit K: Discovery Matrix.

Exhibit L: Melinda Hays' December 2016 Email.

Exhibit M: Deposition of Melinda Hays.

1

Exhibit N: Costa's 30(b)(6) Responses.

Exhibit O: Costa's Responses to Fifth Requests for Production.

Exhibit P: Costa's Responses to Third Interrogatories.

Exhibit Q: ESI Order.

Exhibit R: Carhartt's Deficiency Letter.

Exhibit S:  Costa's Responses to Request for Admissions.